Filed 6/4/15

**CERITIFED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | H040779<br>(Santa Clara County<br>Super. Ct. No. 307-JV33744 E.F.G.) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>J.S.,<br><br>        Defendant and Appellant. | |


        Appellant J.S., formerly a minor with a long history of dependency and delinquency issues, successfully completed his program at the California Department of Corrections and Rehablitation Department of Juvenile Justice (DJJ).  Prior to his release, the Legislature enacted Assembly Bill 1628 (Stats. 2010, ch. 729, § 10, eff. Oct. 19, 2010, [Juvenile Parole Realignment bill]) (Realignment), eliminating DJJ administered parole, and releasing minors to community based supervision.  When J.S. was released, he was placed on locally supervised probation instead of DJJ administered parole.  As a consequence, the Board of Parole Hearings (Board) did not, as they had been required to in the past, make a finding upon release as to whether his discharge from parole was honorable or otherwise.  Because honorable discharge from parole entitles youths to an automatic release from all penalties and disabilities resulting from the offense or crime

for which they are committed, J.S. petitioned the trial court to make the finding in the place of DJJ. (Welf. & Inst. Code, § 1772, subd. (a).)[1] The trial court denied the petition, and J.S. appeals that order. Although we conclude that the Legislature should amend the statutory scheme to be consistent with Realignment, the trial court did not err in denying the order, so we will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

J.S. was born in 1992 in prison. His mother subsequently abandoned him to a stranger she had met at a Denny's restaurant. J.S.'s father had been convicted of murder prior to J.S.'s birth. The stranger became his guardian, but social services received numerous complaints about the living condition and abuse suffered by J.S. in her home. J.S. recounts a history of severe emotional cruelty at the hands of his mother and his guardian. J.S. became a dependent child under section 300 at the age of six, and suffered abuse at the hands of a staff member of Millhouse Children's Services in 2007 at the age of 15. By 2009, he had lived in 14 different placements. He has been diagnosed with Reactive Attachment Disorder, Attention Deficit Hyperactivity Disorder, Oppositional Defiant Disorder and alcohol/cannabis abuse. While an adolescent, J.S. was associated with the Crips criminal street gang, and reported losing 19 of his friends due to gang violence.

Beginning in 2007 and continuing through 2010, multiple petitions were filed against J.S under section 602. The petitions included allegations of robbery (Pen. Code, §§ 211, 212.5, subd. (c)), carrying a concealed dirk or dagger (former Pen. Code, § 12020, subd. (a)(4)), use of a deadly weapon other than a firearm (Pen. Code, § 417, subd. (a)(1)) and disturbing the peace. (Pen. Code, § 415.) The trial court declared J.S. a dual status youth, and sustained the various petitions. On April 27, 2010, the court sustained another petition alleging robbery (Pen. Code, §§ 211, 212.5, subd. (c)),

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise specified.

2

possession of marijuana for sale (Health & Saf. Code, § 11359), and oral copulation by force. (Pen. Code, § 288a, subd. (c)(2).) During the May 11, 2010 dispositional hearing, the court ordered J.S. committed to the DJJ with the maximum time of confinement of 9 years, 8 months. On November 7, 2013, DJJ recommended that appellant be discharged. He had graduated from high school and had performed well in programs while confined. On November 25, 2013, the juvenile court held a reentry dispositional hearing, adopted the probation officer's recommendations for probation, and ordered J.S. released from custody. One of the conditions of probation was that appellant register as a sex offender upon his release. (Pen. Code, § 290.008)

By January 2014, J.S.'s living situation had fallen apart and he became homeless. As a result, he moved to Monterey County, but failed to timely advise probation of his whereabouts, and to properly update his sex offender registration. Although he attempted to inform probation on January 6, 2014 of his circumstances, and tried to register on February 3, 2014 in Marina, California, he was arrested on February 4, 2014 when he returned to the Marina Police Department to update his registration. On February 5, 2014, the probation department noticed a probation violation hearing for February 6, 2014. The notice listed four violations: (1) appellant failed to participate in substance abuse counseling; (2) appellant failed to provide proof of participation in sexual offender counseling; (3) appellant failed to keep probation advised of his whereabouts and instead moved to another county; and (4) appellant failed to update his sex offender registration.

While this probation violation was pending in the criminal court, trial counsel filed a motion for honorable discharge and section 1772, subdivision (a) relief in juvenile court, arguing that because DJJ no longer makes discharge status recommendations after Realignment, the juvenile court should make a finding of honorable discharge in its place, and relieve appellant from the requirement to register as a sex-offender. The court

3

denied the motion, finding that section 1772, subdivision (a) did not authorize the trial court to make the honorable discharge determination.[2]  This timely appeal ensued.

On appeal, we appointed counsel to represent J.S. in this court.  Appointed counsel filed an opening brief pursuant to *People v. Serrano* (2012) 211 Cal.App.4th 496 (*Serrano*)), which states the case and the facts but raised no specific issues.  Pursuant to *Serrano,* on June 2, 2014, we notified appellant of his right to submit written argument in his own behalf within 30 days.  On July 1, 2014, we received a supplemental brief from J.S.  In his brief, J.S. contends that the trial court is vested with the authority to declare a minor honorably discharged and so the court erred in refusing to do so.  Based on this well drafted brief, and our further review of the record, we asked counsel on appeal to file supplemental briefs addressing the following questions:

"Since the passage of AB 1628, does the juvenile court have the authority to declare a juvenile's discharge to be honorable, general or dishonorable, and if so, did the trial court err in denying appellant's motion to have his discharge declared honorable?"

Both appellant and respondent have filed supplemental briefs, and we now address the merits of these issues.

---

[2]  In denying the petition, the trial court stated, "Well, I will deny your motion.  I will not address the issue of whether or not registration is a penalty or not.  I would like to be creative, but I think I am required to do so within the bounds of what the law says.  I am wholly [underwhelmed] by the fact that the Department of Juvenile Justice says other judges are doing it.  [¶] The language of the statute simply does not give the court the power to do an honorable discharge, and further, I don't think that you can couple the request for the party to petition the court to have the petition set aside and dismissed with a language that says thereafter be relieved from penalties.  [¶] I think one follows the other.  If I'm wrong, I'm happy to have the Sixth District weigh in on this.  I think that legislative fix [*sic*] I think that [appellant] is in kind of a black hole of the law here, but you know, there are some things that the juvenile court can do if it is sort of mandated to do something but isn't given the tools, but in this case the language here doesn't give the court at the get-go the authority to make that decision, and I am not prepared to embrace it, so I respect your motion, but it is denied."

DISCUSSION

In his supplemental briefs (both the brief filed by appellant himself and the one filed by his appellate counsel), J.S. argues that the trial court erred in refusing to grant his motion for honorable discharge and to relieve him of the requirement to register as a sex-offender. He contends that the existing statutes regarding honorable discharge cannot be harmonized or even reconciled with the mandates of Realignment, leaving youths in limbo. He urges this court to recognize and correct the inconsistencies created by Legislature in enacting Realignment with respect to the honorable discharge determination. For the reasons discussed below, we decline to do so.

**I. *This Court Cannot Remedy the Legislature's Failure to Provide a Mechanism for the Honorable Discharge Finding in the Realignment Legislation***

**A. *Procedure prior to Realignment***

Prior to Realignment, once a youth completed his commitment at the DJJ and parole period, the Board determined his eligibility for discharge. As part of this determination, the Board was required to give the youth an honorable discharge where the Board found that the "person so paroled has proved his or her ability for honorable self-support." (§ 1177.) Otherwise, the Board could award a general or dishonorable discharge. If *honorably* discharged, a youth was automatically entitled to release from all penalties and disabilities resulting from the offense or crime for which he was committed. (§ 1772, subd. (a).)[3] Under section 1772, subdivision (a), whether honorably discharged, generally discharged or dishonorably discharged, any youth can also petition the juvenile court to set aside the verdict of guilty and dismiss the accusation or information against

---

[3] "[E]very person honorably discharged from control by the Youth Authority Board . . . shall thereafter be released from all penalties and disabilities resulting from the offense or crime for which he or she was committed, and every person discharged may petition the court which committed him or her, and the court may upon that petition set aside the verdict of guilty and dismiss the accusation or information against the petitioner who shall thereafter be released from all penalties and disabilities resulting from the offense or crime for which he or she was committed . . . ." (§ 1772, subd. (a).)

the youth, and thereafter the youth would be eligible for release from all penalties and disabilities. (*Ibid.*)

**B.** *Realignment Makes no Provision for the Honorable Discharge Finding Under the Local Supervision Model*

In October 2010, the California Legislature passed Realignment which addressed numerous issues, including the transfer of jurisdiction and supervision of juveniles from DJJ to local juvenile courts. (§§ 607.1, 1766 & 1766.01.) After passage of Realignment, once a youth completes his commitment at DJJ, he is released to the juvenile court for supervision while on probation. The goal of Realignment was to eliminate DJJ parole by July 2014 and shift this population to county supervision. Counties now receive youth from DJJ custody directly onto their probation caseloads as a result of the passage of this legislation. (Senate Rules Committee, Office of Senate Floor Analyses, Assembly Budget Committee, Assembly Bill 1628 (Oct. 6, 2010.)) Because DJJ administered parole no longer exists, the Board cannot make an honorable discharge determination prior to release, as mandated by section 1177.

The Legislature did not repeal or amend section 1177 to make it consistent with the new local procedures. Under the law as currently written, there is no other entity authorized to make the honorable discharge finding. The Legislature, in enacting Realignment, neither set up another mechanism for determining eligibility for honorable discharge, nor did it amend 1772, subdivision (a) to remove the automatic relief provision in the statute based on such a finding. Currently, therefore, the automatic provision of 1772, subdivision (a) which is triggered by an honorable discharge finding under section 1177, is de facto inoperable. Appellant is correct that this appears to be an oversight by the Legislature.

**C.** *The Remedy for this Conflict is not Court Intervention*

Appellant contends that by leaving section 1772, subdivision (a) unchanged, but failing to create a mechanism for making the honorable discharge determination under

6

Realignment's new local supervision model, the Legislature created an unintended conflict which cannot be harmonized. He argues that legislative intent supports the conclusion that the conflict created by realignment was unintentional. He urges us to act in the Legislatures place to remedy this oversight by finding that the legislature impliedly repealed section 1177 and impliedly amended section 1772, subdivision (a) to allow the juvenile court to make the honorable discharge finding. While we agree that the new local supervision system under Realignment has created some confusion regarding the availability of the honorable discharge designation, sorting out the conflict is a task for the Legislature, not the courts.

Appellant wants us to find that the Legislature impliedly repealed section 1177, and amended section 1772, subdivision (a). Under certain circumstances, courts can act to harmonize statutes by finding implied repeal or amendment where the statutes at issue are so " ' "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. . . ." ' [Citation.]" (*McLaughlin v. State Board of Education* (1999) 75 Cal.App.4th 196, 222-223) This is not the case here. These statutes do need to be harmonized by the Legislature, but they are not so irreconcilable or repugnant as to warrant court intervention. Section 1177 and the mandatory provision of section 1772, subdivision (a) may be de facto inoperable under Realignment, but the discretionary portion of section 1772, subdivision (a) still offers relief.

Appellant claims this court must act to provide youth with an immediate remedy because until the Legislature acts, youth will be deprived of the benefits conferred by section 1772, subdivision (a). Contrary to appellant's argument, a youth is not entirely deprived of the benefit of section 1772, subdivision (a) under the current state of the law. Appellant misreads the statute. A youth is not currently able to be released from all penalties and disabilities *as a matter of right* based on an honorable discharge finding. (*People v. Navarro* (1972) 7 Cal.3d 248, 277-278.) However, pursuant to section 1772, subdivision (a), any youth discharged can still petition the juvenile court to "set aside the

7

verdict of guilty and dismiss the accusation or information against the petitioner who shall *thereafter* be released from all penalties and disabilities resulting from the offense or crime for which he was committed." (*Ibid.,* emphasis added.) In addition to the mandatory requirement to release a youth from penalties and disabilities upon honorable discharge, this section also "confers *discretionary* power upon the court to grant this relief on such showing as to the court seems satisfactory, after application by the person who did not receive an 'honorable' discharge." (*People v. Navarro, supra,* & Cal.3d. at p. 278, emphasis added.) Section 1177 may no longer be in use, but that does not render section 1772, subdivision (a) inoperable. Any youth can still, upon petition to the juvenile court, request relief under the statute. While this relief is no longer mandatory, as when there had been a finding of honorable discharge, the statute still provides the court with authority to grant discretionary relief. Since a youth still has a remedy under the statute, this court's immediate intervention is not necessary.

Even if we were inclined to intervene, we cannot presume to know how the Legislature would harmonize these statutes. In correcting this inconsistency, the Legislature could do a number of things. It could transfer the authority to make the honorable discharge finding to the trial court as the appellant suggests, or it could choose to eliminate the entire concept of honorable discharge, eliminating along with it the automatic relief portion of section 1772, subdivision (a).

Appellant contends that the legislative intent behind Realignment was to transfer all aspects of youth supervision to the county, including the honorable discharge determination. Therefore, he argues, the Legislature intended this decision be shifted to the trial court, but neglected to specify this change. We are not persuaded by appellants reasoning. Previously, the Board's honorable discharge finding acted to divest the court of discretion in granting relief under section 1772, subdivision (a). Where such a determination was made, relief was automatic. Because the Board oversaw the parole, it was best situated to evaluate a youth's performance and determine whether he qualified

for automatic relief. Where the Board did not make that finding, the juvenile court still had the discretion to provide relief to any youth. This two tiered system made sense under the old supervision model.

After realignment, and transfer to local supervision, the juvenile court now oversees the probationary process and is charged with evaluating the youth's performance on probation. Under this model, the *court* is now best situated to evaluate the youth's performance. A statutory scheme where the juvenile court would be required to make the honorable discharge finding, would only serve to eliminate *its own* discretion to provide relief under section 1772, subdivision (a). Under the current scheme, a two pronged approach does not make sense. Therefore, it is not more likely that the Legislature intended to transfer this function to the trial court rather than to eliminate the mandatory element of relief under the statutory scheme. As this court cannot know the Legislature's preferred course of action based on general legislative intent, we are not prepared to construe the current conflict as either an implied repeal of section 1177 or as an amendment of section 1772, subdivision (a).

## III. *Appellant's Application for Relief Under Section 1772, Subdivision (a) was Premature*

Even though the court was not authorized to grant appellant's motion for honorable discharge, pursuant to section 1772, subdivision (a), his petition also sought to be relieved of the "penalty" and "disability" of having to register as a sex offender. (See § 1772, subd. (a).) The trial court denied this request as well, stating, "I'm addressing—I think you can come back at the appropriate time and ask me to dismiss. Whether or not it's a penalty that would be erased, I'm not addressing today because I don't need to." Since *any* youth can petition to have his verdict set aside and *thereafter* be released from penalties and disabilities associated with his offense, appellant could have sought relief under the statute, even without the honorable discharge finding. As the juvenile court noted, however, appellant did not file a motion to dismiss. In fact, he did not want the

9

case dismissed because he wanted to remain on probation in order to continue receiving services. Without an honorable discharge, appellant must first request that his verdict be set aside if he wishes to be released from penalties and disabilities. Because appellant did not wish his case to be dismissed, he was not yet eligible to be released from any penalties or disabilities.[4] This is what the juvenile court correctly concluded.

## DISPOSITION

The order appealed from is affirmed.

---

[4] Because we conclude that appellant could not petition the court for honorable discharge, we need not decide whether he met the standard for honorable discharge. Additionally, because appellant was not seeking dismissal, and could therefore not request to be released from the penalties associated with his offense, we need not decide whether the requirement to register as a sex offender is the type of "penalty" or "disability" from which the court can release him after dismissal. (See § 1772, subd. (a).)

_____
                   RUSHING, P.J.

WE CONCUR:

_____
        PREMO, J.

_____
        ELIA, J.

*People v. J.S.*
**H040779**

Trial Court:                                  Santa Clara County
                                              Superior Court No.: 307-JV33744 E.F.G.


Trial Judge:                                  The Honorable Patrick E. Tondreau


Attorney for Defendant and Appellant          Sidney S. Hollar
J.S.:                                         under appointment by the Court
                                              of Appeal for Appellant


Attorneys for Plaintiff and Respondent        Kamala D. Harris
The People:                                   Attorney General

                                              Gerald A. Engler,
                                              Chief Assistant Attorney General

                                              Eric D. Share,
                                              Supervising Deputy Attorney General

                                              Joan Killeen,
                                              Deputy Attorney General


*People v. J.S.*
**H040779**