Filed 8/3/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FREDDIE COLE,<br><br>    Defendant and Appellant. | B304329<br><br>(Los Angeles County<br>Super. Ct. No. NA061968) |

APPEAL from an order of the Superior Court of Los Angeles County, Jesus I. Rodriguez, Judge.  Dismissed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\* \* \* \* \* \*

This appeal presents a problem that is both commonplace and elusive.  When counsel appointed to represent a criminal defendant during the initial appeal of his conviction concludes that there are no reasonably arguable issues to present to the Court of Appeal, *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*)

delineates the procedures both counsel and the Court of Appeal are to follow. What procedures apply when the appeal is from the denial of postconviction relief (rather than, as in *Wende*, the defendant's first appeal of right)? Do *Wende*'s procedures still apply? And if not, on what basis may a Court of Appeal prescribe the procedures that counsel and the court are to follow? A handful of courts have addressed the first question, but the second has yet to be confronted.

We publish to provide our views and guidance on both questions. Taking the second question first, we hold that *Wende*'s constitutional underpinnings do not apply to appeals from the denial of postconviction relief; consequently, the procedures we and other courts have prescribed are grounded solely in our supervisory powers to control the proceedings before us. We further hold that, in the exercise of these powers, counsel appointed in such appeals is required to independently review the entire record and, if counsel so finds, file a brief advising the appellate court that there are "no arguable issues to raise on appeal"; the defendant has a right to file a supplemental brief; and this court has the duty to address any issues raised by the defendant but otherwise may dismiss the appeal without conducting an independent review of the record. Because the defendant who has appealed the denial of postconviction relief in this case has not filed a supplemental brief, we dismiss this appeal as abandoned.

2

## I.     Facts

In 2007, a jury convicted Freddie Cole (defendant) of (1) murder (Pen. Code, § 187, subd. (a)),[1] and (2) arson of an inhabited structure (§ 451, subd. (b)). That same year, the trial court sentenced defendant to prison for 35 years to life. This was a "third strike" sentence under our state's Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)), plus 10 years because each of his two prior strikes also constituted prior serious felonies (§ 667, subd. (a)(1)); one of defendant's prior "strikes" was also for arson of an inhabited structure. We affirmed his convictions and sentence in 2008. (*People v. Cole* (Aug. 7, 2008, B202387) [nonpub. opn.].)

## II.     Procedural Background

In April 2019, defendant filed a petition seeking resentencing under section 1170.95. In the form petition, defendant checked the boxes for the allegations that he had been charged with murder, that he was convicted "pursuant to the felony murder rule or the natural and probable consequences doctrine," and that his murder conviction would be invalid under the "changes made to Penal Code §§ 188 and 189, effective January 1, 2019." In explaining why his murder conviction would be invalid under the 2019 changes to sections 188 and 189, defendant did not check the box alleging that he "was not the actual killer." He also requested counsel.

On January 15, 2020, and after appointing defendant counsel, the trial court summarily denied defendant's petition. Based upon the recitation of facts in our opinion affirming his

---

1     All further statutory references are to the Penal Code unless otherwise indicated.

conviction, which showed defendant had acted alone in splashing gasoline on the porch of the apartment where the murder victim lived moments before the fire started and had repeatedly threatened to "burn this mother fucker down and everybody that's in it," the trial court concluded that defendant was "the actual killer" and hence categorically ineligible for relief under section 1170.95.

Defendant filed a timely notice of appeal.

Pursuant to the California Rules of Court and our district's routine practice of appointing counsel to represent defendants appealing from the denial of postconviction relief, we appointed appellate counsel for defendant. (Cal. Rules of Court, rule 8.300(a)(1).) Citing *Wende*, *supra*, 25 Cal.3d 436, counsel filed an opening brief setting out the procedural history and relevant facts of this case, and a declaration indicating that counsel had "reviewed the entire record" and had informed defendant "of his right to file a supplemental brief." Counsel has invited us to "independently review the entire record on appeal for arguable issues."

We sent a letter to defendant advising him that he had 30 days to file a supplemental brief.

Defendant has not filed a timely supplemental brief.

## DISCUSSION

The questions presented in this appeal are straightforward: (1) What procedures must appointed counsel and this court follow when counsel determines that an appeal *of an order denying postconviction relief* lacks arguable merit, and (2) By what authority do we prescribe those procedures? Discerning definitive answers to these questions, however, is more akin to navigating the Labyrinth of Crete. The need for these answers is

4

nevertheless great:  In recent years, our Legislature and voters have enacted an increasing number of laws that empower convicted defendants to seek postconviction relief reducing their sentences, reducing their crimes of conviction, or vacating their pleas.  (See, e.g., § 1170.126 [defendants convicted of "third strike" offenses may seek reduction in sentence if their "third strike" offense does not qualify as a "strike" offense], § 1170.18 [defendants convicted of certain low-level felonies may seek reduction of those crimes to misdemeanors], § 1473.7 [defendants may seek to vacate their pleas if they did not "meaningfully understand" the "immigration consequences" of their pleas], § 1016.8 [defendants may seek to vacate their pleas if predicated upon a waiver of the "future benefits of . . . changes in the law that may retroactively apply"].)  Section 1170.95 is one such law, as it empowers a defendant convicted of murder to vacate his murder conviction if it was based upon a theory of vicarious liability—and, in particular, upon a theory of felony murder or natural and probable consequences—unless he acted with the intent to kill or was "a major participant" in an underlying felony and "act[ed] with reckless indifference to human life"; it does not provide relief to a "person [who] was the actual killer." (§ 1170.95; see also, §§ 188, 189, subd. (e)).)

In many respects, we are not writing on a *tabula rasa.* Several cases have addressed what procedures appointed counsel and the Court of Appeal should follow when counsel finds no arguable merit to an appeal from the denial of postconviction relief.  First among them is *People v. Serrano* (2012) 211 Cal.App.4th 496 (*Serrano*).  But these cases have not settled upon the same procedures.  (Compare *Serrano*, at pp. 501, 503 [counsel must file brief, defendant has right to file supplemental brief,

5

court has no duty to independently review the record] with *People v. Soto* (July 9, 2020, H047581) __ Cal.App.5th __, 2020 Cal.App.LEXIS 637, *1 (*Soto*) [same, except court went on to independently "review[] the briefs and record"]; *People v. Johnson* (2016) 244 Cal.App.4th 384, 389, fn. 5 (*Johnson*) [same]; *In re J.S.* (2015) 237 Cal.App.4th 452, 457 (*In re J.S.*) [same].) And none of this precedent has squarely confronted the question of the legal basis for prescribing these procedures.

## I. Procedures When Counsel Finds No Reasonably Arguable Issues On Appeal, Generally

In the universe of law defining what procedures appointed counsel and the Court of Appeal must follow when counsel determines there are no arguably meritorious issues to raise on appeal, the proverbial Delphi—or center—of that universe is *Wende*, *supra*, 25 Cal.3d 436. As noted above, *Wende* set forth the procedures to be followed during the defendant's "first appeal of right"—that is, during the direct appeal of his judgment of conviction and sentence. (*Id.* at pp. 438, 443.) At this stage in criminal proceedings, a criminal defendant has a federal constitutional right to the effective assistance of counsel. (*Evitts v. Lucey* (1985) 469 U.S. 387, 392-400, 405 (*Evitts*) [so holding]; *In re Sade C.* (1996) 13 Cal.4th 952, 978 (*Sade C.*) [so noting]; see generally *Douglas v. California* (1963) 372 U.S. 353, 353-358 [indigent defendant has right to counsel on first appeal of right].) The right to effective assistance of counsel during the first appeal of right is based partly on the due process-based incorporation of the Sixth Amendment right to counsel to the states and partly on the equal protection-based concern that indigent defendants be treated the same as non-indigent defendants. (*Evitts*, at p. 405.) The purpose of *Wende*'s procedures is "to ensure [the] indigent criminal defendant's right to effective assistance of counsel"

6

during the first appeal of right.  (*People v. Kelly* (2006) 40 Cal.4th 106, 118 (*Kelly*); *Sade C.*, at p. 978; see also *People v. Feggans* (1967) 67 Cal.2d 444, 447 (*Feggans*) [so holding, as to pre-*Wende* procedures on the first appeal of right].)

*Wende* requires (1) appellate counsel (a) to independently evaluate the "entire record" and, if counsel determines there are no "reasonably arguable" issues (that is, no non-frivolous issues) to raise on appeal, (b) to file a brief that so indicates and that sets forth certain information about the trial court proceedings, (2) the defendant to be given the opportunity to file a supplemental brief raising issues, and (3) the Court of Appeal to independently review the record to determine whether there are any non-frivolous arguments to be addressed on appeal.  (*Wende, supra,* 25 Cal.3d at pp. 438, 442-443; *Feggans, supra,* 67 Cal.2d at p. 448; *Kelly, supra,* 40 Cal.4th at pp. 109-110, 118; *Sade C., supra,* 13 Cal.4th at pp. 977, 979; accord, *Anders v. California* (1967) 386 U.S. 738, 744 (*Anders*).)  By conscripting both appointed counsel *and* the Court of Appeal to the task of independently poring over the record for reasonably arguable issues, presumably on the Argus-inspired theory that the more eyes, the better, *Wende*'s procedures are able to fulfill their chief purpose, noted above, of  "prophylactic[ally]" "safeguard[ing]" the defendant's constitutional right to the effective assistance of counsel during his first appeal of right.  (*Smith v. Robbins* (2000) 528 U.S. 259, 265, 273, 276 (*Smith*); *Pa. v. Finley* (1987) 481 U.S. 551, 554 (*Finley*)).

*Wende's* procedures are inextricably moored to their constitutional justification:  "When [a] defendant 'has no underlying constitutional right to [the effective assistance of] appointed counsel,' he 'has no constitutional right to insist on the

7

[*Wende*] procedures which were designed solely to protect that underlying constitutional right.'" (*Sade C.*, *supra*, 13 Cal.4th at p. 973, quoting *Finley*, *supra*, 481 U.S. at p. 557.) To be sure, a defendant sometimes has a constitutionally grounded, due process-based right to *the appointment of counsel* in postconviction proceedings. That right is a limited one, however, and only kicks in once the defendant makes a prima facie showing of entitlement of postconviction relief. (*People v. Shipman* (1965) 62 Cal.2d 226, 232 (*Shipman*) [so noting, as to defendant seeking a writ of *coram nobis*]; *In re Clark* (1993) 5 Cal.4th 750, 779-780 (*Clark*) [so noting, as to defendant seeking a writ of habeas corpus], superseded by statute on other grounds as stated in *Briggs v. Brown* (2017) 3 Cal.5th 808, 842 (*Briggs*); *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 981-982 [so noting, as to defendant seeking relief under section 1473.7 in trial court].) But having a constitutional right to the appointment of counsel is not the same as having a constitutional right to the effective assistance of that counsel (see *Sade C.*, at p. 978 [noting a distinction between entitlement to "nominal assistance" of counsel and "effective assistance" of counsel]), and our Supreme Court has steadfastly held that "there is no constitutional right to the effective assistance of counsel" in state postconviction proceedings (*People v. Boyer* (2006) 38 Cal.4th 412, 489; *People v. Young* (2005) 34 Cal.4th 1149, 1232-1233; *People v. Kipp* (2001) 26 Cal.4th 1100, 1139-1140). Consequently, the procedures set forth in *Wende* do not apply to appeals from the denial of postconviction relief, even if the defendant might have a right to the appointment of counsel. (*Finley*, at p. 556; *Sade C.*, at p. 972; *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 536-537 (*Ben C.*).)

8

With this background, we now turn to the questions presented: (1) On what authority may we impose *Wende*-like procedures to an appeal of the denial of postconviction relief, and, if we possess such authority, (2) Which procedures should we adopt?

## II. Procedures When Counsel Finds No Reasonably Arguable Issues On Appeals In Postconviction Proceedings

### A. *Authority to impose Wende-like procedures in postconviction proceedings*

Our Supreme Court has extended a subset of *Wende*'s procedures to appeals not involving a criminal defendant's first appeal of right, but its decisions have not definitively articulated the justification for doing so.

In *Ben C., supra,* 40 Cal.4th at p. 535, the court held that the full panoply of *Wende* procedures do not apply when appellate counsel determines that an appeal of an order declaring a conservatorship over the appellant has no arguable merit. The court declined to extend *Wende* either as a matter of constitutional imperative or under its "inherent authority." (*Ibid.*) *Ben C.* went on to hold that appellate counsel was required to file a *Wende*-like brief and that the conservatee had a right to file a supplemental brief (*id.* at p. 544 & fn. 6), but did not explain on what authority it was prescribing this subset of *Wende* procedures. The Court of Appeal decisions that have followed *Ben C.*'s lead in prescribing a subset of *Wende* procedures in the postconviction and other contexts have been similarly silent on their basis for doing so. (*Serrano, supra,* 211 Cal.App.4th at p. 503; *People v. Dobson* (2008) 161 Cal.App.4th 1422, 1438-1439 (*Dobson*) [appeal from order denying petition for restoration of competency following a finding of not guilty by

reason of insanity]; *People v. Martinez* (2016) 246 Cal.App.4th 1226, 1239-1240 (*Martinez*) [appeal from order extending civil commitment of person found not guilty by reason of insanity]; *People v. Taylor* (2008) 160 Cal.App.4th 304, 311-312 [appeal from order denying challenge to civil commitment placement as a medically disordered offender].)

In *Sade C.*, *supra*, 13 Cal.4th 952, and *In re Phoenix H.* (2009) 47 Cal.4th 835 (*Phoenix H.*), the court held that the full panoply of *Wende* procedures do not apply when appellate counsel determines that an appeal of an order terminating a parent's rights over his or her child in juvenile dependency proceedings has no arguable merit. (*Sade C.*, at pp. 961, 985-993; *Phoenix H.*, at p. 838.) These cases went on to hold that appellate counsel was required to file a *Wende*-like brief, but that the parent could file a supplemental brief only if the parent made a "showing of good cause" to do so and that the Court of Appeal had no duty to independently review the record for arguable issues. (*Phoenix H.*, at p. 844.) In holding that the court would "not exercise [its] supervisory powers" to grant parents a right to file a supplemental brief (*ibid.*), *Phoenix H.* strongly suggests that the court *was* exercising its supervisory powers in requiring appellate counsel to file a brief and in requiring appellate courts to accept supplemental briefs preceded by a showing of good cause.

We make explicit what *Phoenix H.* implies: Courts of Appeal, like all courts, "have inherent supervisory or administrative powers which enable them to carry out their duties," and these powers include the power to "'formulate rules of procedure' [citation]." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967; *Citizens Utilities Co. v. Superior Court* (1963) 59 Cal.2d 805, 812-813.) We invoke these inherent

10

supervisory powers to prescribe the procedures to be followed in this court when appellate counsel determines that the appeal from the denial of postconviction relief lacks any reasonably arguable issues.

At the same time, and like all the decisions cited above, we reject the notion that the Constitution compels the adoption or extension of *Wende* procedures (or any subset of them) for appeals other than a criminal defendant's first appeal of right because, beyond that appeal, there is no right to the effective assistance of counsel. Time and again, the United States Supreme Court and our Supreme Court have rejected the very same argument. (See *Finley*, *supra*, 481 U.S. at p. 555; *Ben C.*, *supra*, 40 Cal.4th at pp. 538-543; *Sade C.*, *supra*, 13 Cal.4th at pp. 986-993.) Relying upon our supervisory powers rather than due process and equal protection also avoids what might be viewed as an absurd result, particularly with respect to appeals of orders summarily denying postconviction relief. As noted above, for many forms of postconviction relief, the applicant has no due process right to the appointment of counsel before the trial court unless and until he makes a prima facie showing of entitlement to relief (e.g., *Clark*, *supra*, 5 Cal.4th at pp. 779-780; *Shipman*, *supra*, 62 Cal.2d at p. 232), and many applications are summarily denied for the failure to make that showing before counsel is ever appointed. If an applicant does not from the outset need counsel to assure he receives due process before the trial court that is entrusted with litigating his or her claim in the first instance, on what basis would *Wende*-like procedures premised on a fully-fledged right to the *effective assistance of counsel* suddenly spring into existence

11

for the first time on appeal like a fully-grown Athena bursting from Zeus's skull?  We perceive no such basis.[2]

**B.** ***Procedures to be followed in postconviction proceedings***

   1. *Analysis*

Despite the seemingly unanimous agreement of the courts that *Wende* procedures are not constitutionally required in appeals other than a criminal defendant's first appeal of right, those courts have not been unanimous in prescribing which procedures they require in the implicit exercise of their supervisory powers.

---

[2] Recognizing a due process-based right to *Wende*-like review in all postconviction proceedings would lead to a particularly bizarre result in light of a recent change to the law of habeas corpus.  Until recently, a defendant whose petition for habeas corpus was denied by the trial court had no right to appeal that denial to the Court of Appeal (*Briggs, supra*, 3 Cal.5th at p. 836); instead, the defendant had to file a new writ with the Court of Appeal (*Robinson v. Lewis* (July 20, 2020, S228137) __ Cal.5th __, 2020 Cal.LEXIS 4360, *11-*13), and, as with all such writs, the petitioner would have a due process-based right to counsel only if the Court of Appeal found he or she made a prima facie showing for relief and issued an order to show cause (*Clark*, at p. 780).  In 2016, however, the law changed to grant defendants "[under] a judgment of death" a right to appeal the denial of their habeas corpus petitions to the Court of Appeal.  (§§ 1509, 1509.1.)  If *Wende*-like procedures were grounded in due process, habeas petitioners under a judgment of death would suddenly have a due-process right to counsel long before they made any prima facie showing simply by virtue of being granted the right to appeal to the Court of Appeal (rather than the right to file a new writ with that court).

12

The variety of different procedures the courts have prescribed can be placed on a spectrum. At one end of the spectrum are procedures that mimic *Wende* procedures in their entirety—that is, counsel has a duty to independently review the record and file a brief; the appellant has a right to file a supplemental brief; and the Court of Appeal engages in an independent review of the record. (E.g., *Soto, supra*, __ Cal.App.5th__ [2020 Cal.App.LEXIS 637, *7-*8]; *Johnson, supra*, 244 Cal.App.4th at p. 389, fn. 5; *In re J.S., supra*, 237 Cal.App.4th at pp. 456-457.) Next along the spectrum are procedures that require counsel's independent review of the record and assure the appellant a right to file a supplemental brief, but do not obligate the appellate court to conduct a second, independent review of the record. (E.g., *Ben C., supra*, 40 Cal.4th at p. 544 & fn. 7; *Dobson, supra*, 161 Cal.App.4th at pp. 1438-1439.) Further along the spectrum are procedures that require counsel's independent review of the record, but which make the appellant's right to file a supplemental brief contingent upon a showing of "good cause" and which do not obligate the appellate court to independently review the record. (E.g., *Sade C., supra*, 13 Cal.4th at pp. 961, 985-993; *Phoenix H., supra*, 47 Cal.4th at pp. 838, 844.) And at the far end of the spectrum would be *no Wende*-like procedures even if appellate counsel is appointed, although no court has ever so held (and we doubt they would, given counsel's duty to zealously advocate for his client (*People v. McKenzie* (1983) 34 Cal.3d 616, 631 (*McKenzie*) ["'The duty of a lawyer both to his client and to the legal system, is to represent his client zealously within the bounds of the law.'"], italics omitted)).

13

Unfortunately, none of these courts has articulated why they have adopted one set of procedures along this spectrum rather than another. In other words, they have not set forth the criteria by which they have calibrated which procedures are appropriate in the implicit exercise of their supervisory power. Fortunately, however, there is a ready analogy—namely, the criteria used to calibrate which procedures are necessary to assure that a given procedure is fundamentally fair in order to comply with due process. (*Lassiter v. Dep't of Social Services* (1981) 452 U.S. 18, 27 (*Lassiter*).) While legally distinct, the due process guarantee and the exercise of supervisory powers both seek to fix the procedures that best calibrate competing interests in order to provide the just and efficient adjudication of disputes. The criteria relevant to both inquiries should accordingly be the same.

What are those criteria? They are (1) "the private interests at stake," (2) "the government's interests," and (3) "the risk that the procedures used will lead to erroneous decisions." (*Lassiter*, *supra*, 452 U.S. at p. 27; *Mathews v. Eldridge* (1976) 424 U.S. 319, 334-335.)

The private interests at stake when adjudicating a criminal defendant's postconviction request for relief are undoubtedly significant and weighty. Such a defendant may still be incarcerated and seeking release from physical confinement. (*Ben C.*, *supra*, 40 Cal.4th at p. 540 [confinement due to conservatorship is a "significant" private interest].) Even if the defendant has fully served the sentence imposed, he or she may be seeking to relieve themselves of the opprobrium and stigma of their prior conviction(s), or the collateral consequences that flow

14

from the conviction(s). (E.g., *Serrano, supra,* 211 Cal.App.4th at p. 502 [petition under section 1473.7 to avoid deportation].)

The private interest in this situation is less weighty than the interests at stake in *Wende* itself. A defendant's interest during the first appeal of right at issue in *Wende* is ensuring that his liberty is not taken away unless he is found guilty beyond a reasonable doubt at a trial where his constitutional and statutory rights are scrupulously honored; the failure to protect this interest results in wrongful incarceration. A defendant's interest when seeking postconviction relief, in most cases, seeks the "benefit of ameliorative changes" in the law rendered applicable to the defendant by legislative grace rather than constitutional imperative (*People v. Perez* (2018) 4 Cal.5th 1055, 1063-1064 (*Perez*); *Dillon v. United States* (2010) 560 U.S. 817, 828); the failure to protect this interest results in the failure to reduce or eliminate a conviction or sentence that was previously imposed and adjudicated to be valid. (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1040 ["A finding [that] an inmate is not eligible for [the postconviction relief at issue] does not increase or aggravate that individual's sentence; rather, it leaves him or her subject to the sentence originally imposed."], overruled in part on other grounds as stated in *People v. Frierson* (2017) 4 Cal.5th 225, 240, fn. 8; *Shipman, supra,* 62 Cal.2d at p. 232 ["the ordinary processes of trial and appeal are presumed to result in valid adjudications"].) Less is at stake in the postconviction context, which explains why the Sixth Amendment's right to a jury's finding of guilt does not apply to fact-finding in support of postconviction relief. (*Perez,* at pp. 1063-1064; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156-1157.) Conversely, the private interest at stake here is weightier than the interests of parents

seeking to retain the rights to their children and whose personal liberty is not at stake. (*Sade C.*, *supra*, 13 Cal.4th at pp. 982, 987 [""punitive"" proceedings have higher stakes].) A defendant's private interest in seeking postconviction relief is most comparable to a denial of release following a finding he is not guilty by reason of insanity; in both situations, the defendant's personal liberty is at stake but what he is seeking is a modification of a previously adjudicated order that deprived him of that liberty in the first place. (Accord, *Dobson*, *supra*, 161 Cal.App.4th at pp. 1438-1439.)

The government interest in adjudicating appeals denying postconviction relief is two-fold. As with all appeals, the state has an "'important'" "interest in an accurate and just resolution of the . . . appeal." (*Sade C.*, *supra*, 13 Cal.4th at p. 989; *Martinez*, *supra*, 246 Cal.App.4th at p. 1235.) The state also has a "legitimate" "'fiscal and administrative interest in reducing the cost and burden of [the appellant] proceedings.'" (*Sade C.*, at p. 989, quoting *Santosky v. Kramer* (1982) 455 U.S. 745, 766; *Martinez*, at p. 1235.) This latter interest recognizes that judicial resources are scarce and that many of the steps of *Wende* review, including the independent review of a record by a court, are resource-intensive. (*Serrano*, *supra*, 211 Cal.App.4th at p. 503.) It also recognizes that the more mechanisms there are for postconviction relief, the more time they will take to adjudicate and the less time that will remain for appeals where greater private interests are at stake, such as first appeals of right.

The risk that providing fewer procedures on appeal from an order denying postconviction relief will lead to an erroneous decision is not especially great. That is partly because, as noted above, defendants seeking postconviction relief have already had

16

their convictions affirmed following their first appeal of right, such that the risk of error due to the absence of *Wende* procedures on an appeal from the denial of postconviction relief is correspondingly less. And it is partly because of our experience that "appointed appellate counsel faithfully conduct themselves as active advocates" on behalf of their clients, and thus will invoke *Wende*-like procedures only when their careful review has turned up no reasonably arguable issues. (*Sade C.*, *supra*, 13 Cal.4th at p. 990.)

### 2. *The procedures we prescribe*

In balancing the private interests of defendants seeking postconviction relief that will reduce or eliminate conviction(s) and sentences previously adjudicated as valid, the government's interests in just adjudication and intelligently allocating resources, and the relatively small risk of error should *Wende*'s procedures not be fully imported, we invoke our supervisory powers to prescribe that the procedures set forth below be followed when counsel is appointed to represent a defendant who is appealing the denial of postconviction relief.[3]

### a. Duty of appellate counsel

When a Court of Appeal exercises its authority to appoint counsel to represent a defendant appealing from the denial of postconviction relief (Cal. Rules of Court, rule 8.300(a)(1)), that counsel has three duties.

---

[3] In setting forth these procedures, we do not reach the question of whether they are sufficient when the sentence imposed was death. "[D]eath is different" (*Gregg v. Georgia* (1976) 428 U.S. 153, 188), and may well alter the interests at stake and hence the calculus of assessing which procedures must be followed.

First, counsel must independently review the "entire record" and "thoroughly research the law." (*Phoenix H.*, *supra*, 47 Cal.4th at p. 840; *Sade C.*, *supra*, 13 Cal.4th at p. 974.) Once counsel has done so, he or she must assess whether there are any reasonably arguable issues—that is, any non-frivolous issues—to present on appeal as to how the trial court erred. (*Smith*, *supra*, 528 U.S. at p. 282 [noting how "the *Wende* procedure . . . defin[es] arguable issues as those that are not frivolous"].)

Second, and if counsel determines that there are no reasonably arguable issues to present on appeal, counsel must file a brief with the Court of Appeal setting forth (1) a brief statement of the pertinent procedural history of the case, (2) a brief summary of the pertinent facts, (3) counsel's declaration that there are no reasonably arguable issues to present on appeal, and (4) counsel's affirmation that he or she remains ready to brief any issues at the request of the Court of Appeal. We recognize that requiring counsel to declare that there are no reasonably arguable issues is asking counsel to navigate between Scylla and Charybdis—that is, to walk gingerly between duty of counsel to zealously advocate for her client (*McKenzie*, *supra*, 34 Cal.3d at p. 631) and her concomitant duty to the court not to present frivolous arguments. (*McCoy v. Court of Appeals, Dist. 1* (1988) 486 U.S. 429, 436-437; accord, *Smith*, *supra*, 528 U.S. at pp. 281-282 [so noting].) Although some cases suggest that a declaration by counsel that there are "no arguable issues" automatically disqualifies counsel (*Anders*, *supra*, 386 U.S. at p. 744) or is unnecessary because it is implied by the filing of the brief itself (*Wende*, *supra*, 25 Cal.3d at p. 442), *Wende* rejected that view and held that counsel may expressly inform the court regarding the non-existence of any reasonably arguable issues

(*ibid.*). To create a clear record, we require counsel to so state and to remain available to brief any issues. (E.g., *In re J.S.*, *supra*, 237 Cal.App.4th at p. 456-457.) We will not require counsel to set forth the "applicable law" in the brief because (1) the cases requiring counsel to do so in first appeals of right do not uniformly require counsel to do so (cf., *Feggans*, *supra*, 67 Cal.2d at p. 447 [pre-*Wende* case requiring counsel to set forth "a statement of the facts and applicable law"]), especially once counsel has identified no reasonably arguable issues (*Wende*, at p. 438 [requiring only a "summary of the proceedings and facts" when counsel determined there were no "arguable issues"]; *Kelly*, *supra*, 40 Cal.4th at p. 121, fn.3 [same]), and (2) the purpose of requiring counsel to set forth the "applicable law"—that is, to aid the Court of Appeal in its independent review of the record (*Feggans*, at p. 447; *Sade C.*, *supra*, 13 Cal.4th at p. 979)—is irrelevant where, as here, a court has no duty to conduct such a review.

Third, at the time counsel files the brief, counsel must (1) inform his or her client that the client has the right to file a supplemental brief to the Court of Appeal within 30 days, and (2) provide the client with a copy of counsel's brief.

                b.     Defendant's right to file a supplemental brief

If counsel files a brief as outlined above, the defendant has a right to file a supplemental brief. This is a departure from the "general rule that a represented defendant has no right personally to present supplemental arguments" to the court (*Kelly*, *supra*, 40 Cal.4th at p. 120), but is warranted here given the private interests at stake.

19

Even if counsel has notified the defendant of his or her right to file a supplemental brief, the Court of Appeal must also do so.

c.      Obligations of the Court of Appeal

The Court of Appeal has no independent duty to review the record for reasonably arguable issues.  (Accord, *Serrano*, *supra*, 211 Cal.App.4th at pp. 501, 503.)

If the defendant does not file a supplemental brief, the Court of Appeal may dismiss the appeal as abandoned.  This is because the order appealed from is presumed to be correct (e.g., *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609), and in the absence of any arguments to the contrary, ineluctably leads to the conclusion that the appellant has not carried his or her burden of proving otherwise (e.g., *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 364).  What is more, when an appeal is dismissed, the court need not write an opinion because "[n]othing is served by requiring a written opinion when the court does not actually decide any contested issues." (*Ben C.*, *supra*, 40 Cal.4th at p. 544.)

However, if the defendant files a supplemental brief, the Court of Appeal is required to evaluate any arguments presented in that brief and to issue a written opinion that disposes of the trial court's order on the merits (that is, by affirming, reversing or other like disposition). (*Kelly*, *supra*, 40 Cal.4th at pp. 120, 124.)

## III.   Application In This Case

Defendant did not file a supplemental brief.  In accordance with the procedures articulated above, we dismiss this appeal as abandoned.

20

**DISPOSITION**

The appeal is dismissed.

**CERTIFIED FOR PUBLICATION.**


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ