Filed 4/26/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>JOSE MARTINEZ,<br><br>    Defendant and Appellant. | G052440<br><br>(Super. Ct. No. M-14023)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Shiela F. Hanson, Judge. Dismissed.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*        \*        \*

The issue presented herein is whether an appellate court is required to independently review the appellate record for the existence of meritorious issues in a matter where the superior court extended the civil commitment of an individual previously found not guilty by reason of insanity (NGI), when the individual's appointed counsel informs the court he or she has found no arguable issues on appeal, the client has been notified of that fact, and was given the chance to file a brief, but did not raise any issues on appeal. While appellate courts have such an obligation in a first appeal of right in a criminal matter (*Anders v. California* (1967) 386 U.S. 738 (*Anders*); *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*)), California courts have found no such obligation on an appeal from the establishment of a conservatorship (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529), from the denial of a petition for outpatient treatment of an NGI (*People v. Dobson* (2008) 161 Cal.App.4th 1422 (*Dobson*)), and from an order committing an individual as a mentally disordered offender (*People v. Taylor* (2008) 160 Cal.App.4th 304 (*Taylor*)). We hold due process does not require an appellate court to conduct an independent review of the appellate record for possible issues in an appeal from an extension of an NGI's civil commitment.

I

FACTS

In 2004, defendant Jose Martinez was found not guilty by reason of insanity on one count each of first degree burglary (Pen. Code,[1] §§ 459, 460, subd. (a)) and attempted burglary (§§ 459, 664, subd. (a)). Martinez, who has been diagnosed with schizophrenia with cannabis dependence and alcohol abuse, was committed to a state hospital. In 2011, he stipulated to an extension of his civil commitment, and the court signed an order granting Martinez outpatient status (CONREP). He was on CONREP for approximately two years, but his outpatient status was eventually revoked when he went

_____

[1] All undesignated statutory references are to the Penal Code.

missing from CONREP for a two-day period in which he smoked marijuana and drank alcohol.

On March 5, 2015, the district attorney filed a petition to extend Martinez's commitment pursuant to section 1025.5, subdivision (b). The jury found "Martinez suffers from a mental disease, defect, or disorder, he now poses a substantial danger of physical harm to others and has serious difficulty in controlling his dangerous behavior, within the meaning of section 1026.5." The court ordered Martinez's commitment extended for two years, to July 25, 2017. Martinez filed a timely notice of appeal.

II

DISCUSSION

We appointed counsel to represent Martinez on appeal. Counsel filed a brief which set forth the facts of the case. Counsel did not argue against the client, but advised the court no issues were found to argue on Martinez's behalf. Martinez was given 30 days to file a supplemental brief on his own behalf. That period has passed, and we have received no communication from Martinez.

Martinez's counsel argued that due process requires this court to undertake an independent review of the appellate record for arguable issues as is the rule in first criminal appeals of right. (*Anders v. California*, *supra*, 386 U.S. 738; *People v. Wende*, *supra*, 25 Cal.3d 436.)

Under the Fourteenth Amendment, a criminal defendant has a constitutional right to counsel on his or her first appeal as of right. (*Evitts v. Lucey* (1985) 469 U.S. 387, 388, citing *Douglas v. California* (1963) 372 U.S. 353.) In *Anders v. California*, *supra*, 386 U.S. 738, a criminal defendant appealed his felony conviction to the Court of Appeal. The appellate court appointed counsel to represent the defendant. Counsel reviewed the record and consulted with the defendant, but concluded the appeal was meritless. (*Id*. at p. 739.) Counsel advised the appellate court in a letter of his conclusion and of the fact that his client desired to file a brief on his own behalf. (*Id*. at pp. 739-

3

740.)  The United States Supreme Court granted certiorari out of a concern "with the extent of the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal."  (*Id*. at p. 739.)

The decision in *Anders* was based on a criminal defendant's right to counsel under the Sixth Amendment and made applicable to the states through the Fourteenth Amendment.  (*Anders v. California*, *supra*, 386 U.S. 742.)  The high court held the procedure whereby appointed counsel merely informs the court through a letter that the attorney has concluded the appeal lacks merit is not an adequate substitute for the right to a fully litigated appeal available to all criminal defendants.  (*Id*. at pp. 742-743.)  The court then spelled out the procedure that should be taken by appointed counsel who, upon reviewing the record and consulting with the client has determined the appeal lacks merit:  "Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court.  His role as advocate requires that he support his client's appeal to the best of his ability.  Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.  That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.  A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.  If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires.  On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal."  (*Id*. at p. 744, fn. omitted.)

4

The issue in *People v. Wende*, *supra*, 25 Cal.3d at page 440, was whether once the Court of Appeal has been informed by appointed counsel that no arguable issue was found, it is required to review the entire appellate record before determining the appeal to be frivolous. Our Supreme Court found "*Anders* requires the court to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous." (*Id*. at p. 441.)

The decision in *Anders* "did not set down an independent constitutional command that all lawyers, in all proceedings, must follow these particular procedures. Rather, *Anders* established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel." (*Pennsylvania v. Finley* (1987) 481 U.S. 551, 554-555 (*Finley*).) *Finley* involved a collateral review of a conviction by a defendant with appointed counsel. Appointed counsel concluded the collateral attack on the defendant's conviction lacked merit and so advised the superior court. (*Id*. at p. 553.) The state appellate court concluded counsel's conduct violated the holding in *Anders*. (*Id*. at pp. 553-554.) The Supreme Court granted certiorari. (*Id*. at p. 554.)

The high court stated an individual does not have a constitutional right to appointed counsel on a collateral attack of a conviction, and "that the right to appointed counsel extends to the first appeal of right, and no further." (*Pennsylvania v. Finley*, *supra*, 481 U.S. at p. 555.) The court reasoned that because a criminal defendant "has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction," the defendant has no such right to counsel in a collateral attack on a conviction that has become final after the initial appeal of right. (*Ibid.*) Whether the *Anders* procedure is required depends not on the mere fact that a defendant has been afforded assistance of counsel; it is "the source of that right to a lawyer's assistance, combined with the nature of the proceedings, that controls the constitutional question."

5

(*Id.* at p. 556.)  To trigger the right to the *Anders* procedure, the source of the appointment of counsel must be the federal Constitution.  (*Ibid.*)

The court found counsel's conduct in *Finley* did not violate the attorney's duty as spelled out in *Anders* and "fully comported with fundamental fairness." (*Pennsylvania v. Finley*, *supra*, 481 U.S. at p. 556.)  The court stated postconviction collateral attack proceedings are not part of criminal proceedings, are themselves "civil in nature," and states are not obligated to provide the procedure.  (*Id*. at p. 557.)  Moreover, when states do provide this "avenue of relief," the due process clause of the Fourteenth Amendment does not require the state to supply the indigent with an attorney.  (*Ibid.*) The court concluded, "Since respondent has no underlying constitutional right to appointed counsel in state postconviction proceedings, she has no constitutional right to insist on the *Anders* procedures which were designed solely to protect that underlying constitutional right.  [¶] . . . [¶] . . . Since respondent has received exactly that which she is entitled to receive under state law—an independent review of the record by competent counsel—she cannot claim any deprivation without due process."  (*Id*. at pp. 557-558.)

The court rejected the argument that once the state appoints counsel on appeal, even though the federal Constitution does not require such appointment, due process requires compliance with *Anders*.  (*Pennsylvania v. Finley*, *supra*, 481 U.S. at p. 557.)  After the decision in *Finley*, it was clear that *Anders* applied only when the Constitution required appointment of counsel on appeal, and that is on a first appeal of right from a criminal conviction.  "[T]he right to appointed counsel extends to the first appeal of right, and no further."  (*Id*. at p. 555.)

Our Supreme Court granted review in *In re Sade C.* (1996) 13 Cal.4th 952, 959 (*Sade C.*), to determine whether *Anders* applied, or should be extended to, an indigent parent's appeal from a judgment or order of the superior court affecting his custody of his child or his status as the parent of the child.  The court noted that in *Evitts v. Lucey*, *supra*, 469 U.S. at pages 396-397, the United States Supreme Court stated

6

*Anders* was based on the Fourteenth Amendment's due process guarantee of counsel for a criminal defendant on a first appeal of right. (*In re Sade C.*, *supra*, 13 Cal.4th at pp. 982-983 ["*Anders*'s 'prophylactic' procedures are dependent for their applicability on the existence of the indigent criminal defendant's right, under the Fourteenth Amendment's due process and equal protection clauses, to the assistance of appellate counsel appointed by the state—and there again, only in his first appeal of right"].) The court concluded *Anders* did not apply to juvenile dependency appeals; it applies only to a first appeal of right in a criminal matter, "and none other." (*Ibid.*, fn. omitted.)

The court rejected the argument that equal protection required extending *Anders*, finding criminal defendants and indigent parents appealing an adverse decision affecting their custody or parental status are not similarly situated for equal protection purposes. (*In re Sade C.*, *supra*, 13 Cal.4th at p. 991.)

The *Sade C.* court concluded the *Anders* procedure is not required and should not be extended to juvenile dependency appeals. (*In re Sade C.*, *supra*, 13 Cal.4th at pp. 984, 992-993.) Unlike criminal prosecutions, which are specifically mentioned in the United States Constitution, the interests at stake in a dependency action are private interests—those of the parent and the child. (*Id.* at p. 987.) Even the state's interest is that of protecting the welfare of the child. (*Ibid.*)

The court declined the request to extend *Anders* to juvenile dependency matters. (*In re Sade C.*, *supra*, 13 Cal.4th at pp. 992-993.) The court rejected arguments "that Anders's 'prophylactic' procedures must be extended to reach an indigent parent's appeal from a state-obtained decision adversely affecting child custody or parental status under direct compulsion of the due process clause of the Fourteenth Amendment and its requirement of fundamental fairness." (*Id.* at p. 985.) In rejecting the argument that the *Anders* procedure *should* be extended to reach the appeal in *Sade C.*, the court used the balancing test announced in *Lassiter v. Department of Social Services* (1981) 452 U.S. 18, to determine the extent of protection required by the Fourteenth Amendment due

7

process clause: "(1) the private interest at stake; (2) the state's interests involved; and (3) the risk that the absence of the procedures in question will lead to an erroneous resolution of the appeal." (*In re Sade C.*, *supra*, 13 Cal.4th at p. 987.)

The private interests at stake in *Sade C.* were the father's fundamental liberty interest in caring for his child (*In re Sade C.*, *supra*, 13 Cal.4th at p. 987), and the child's liberty interest "in a 'normal family home'" (*id*. at p. 988). The court noted either interest "theorectical[ly]" may call for use of the *Anders* procedure. However, the court found that while the procedure could benefit both the child and parent if their interests were aligned, invocation of the *Anders* procedure could cause the child harm when the parent and the child's interests are not aligned, and given a trial court determined their interests were not aligned, the private interests involved do not compel finding due process requires the procedure in appeals from orders adversely affecting the parent's rights in such matters. (*Id*. at p. 989.)

The *Sade C.* court then examined the state's interest in the matter. The state's initial interest is "a '*parens patriae* interest in preserving and promoting the welfare of the child . . . .' [Citations.]" (*In re Sade C.*, *supra*, 13 Cal.4th at p. 989.) But the state has two other legitimate interests as well: "an accurate and just resolution of the parent's appeal" (*ibid.*); and its "'fiscal and administrative interest in reducing the cost and burden'" of the appeal (*ibid.*). On this issue, the court reiterated the decision being appealed was adverse to the father, but that was because the trial court necessarily found he either caused or allowed his child to suffer, the trial court's decision was presumably correct and established the child's best interest was with someone other than with the father. (*Id*. at p. 990.)

Addressing the risk that absence of the procedures in question would lead to an erroneous resolution of the appeal, the court stated its belief such risk was "negligible." (*In re Sade* C.*, supra*, 13 Cal.4th at p. 990.) The court noted its experience with attorneys handling such appeals showed "appellate counsel faithfully conduct

8

themselves as active advocates on behalf of indigent parents" and that at least one appellate court that used the *Anders* procedure in such matters never found an unbriefed issue "'"warranting further action."'" (*Ibid.*)

The *Sade C.* court balanced all three factors and concluded due process did not require use of the *Anders* procedure in matters involving the custody of children or parental status. (*In re Sade C.*, *supra*, 13 Cal.4th at pp. 990-991.) Additionally, the court declined to require the *Anders* procedure under its inherent power to declare rules of appellate procedure in California. (*Id.* at p. 992.)

The issue presented in *Conservatorship of Ben C.*, *supra*, 40 Cal.4th at page 535, was whether the *Anders/Wende* procedure applied in an appeal by a conservatee under the Lanterman-Petis-Short Act of Welfare and Institutions Code. In that matter, a conservatorship of the person was "reestablished, and the least restrictive level of placement was found to be a closed, locked treatment facility. [Citation.]" (*Ibid.*) Citing *Pennsylvania v. Finley*, *supra*, 481 U.S. at page 557, our Supreme Court concluded that "[i]f a defendant 'has no underlying constitutional right to appointed counsel,' the defendant cannot 'insist on the *Anders* procedures which were designed solely to protect that underlying constitutional right.' [Citation.]" (*Conservatorship of Ben C.*, *supra*, 40 Cal.4th at p. 537.)

Citing its earlier decision in *In re Sade C.*, *supra*, 13 Cal.4th 952, the court rejected an argument that *Anders* is directly applicable to conservatorship appeals. (*Conservatorship of Ben. C.*, *supra*, 40 Cal.4th at p. 537.) Nothwithstanding the fact the liberty interests of a conservatee are "significant" (*id.* at p. 540), the court concluded that neither the state or federal due process clause requires the extension of *Anders* to conservatorship appeals (*id.* at p. 539).

Conservatorship proceedings have a number of protections built in. The proposed conservatee has a right to a jury trial to determine whether a conservatorship should be established. The individual also has the right to counsel, including appointed

9

counsel.  Additionally, the party seeking the conservatorship must prove its necessity beyond a reasonable doubt and the jury's verdict must be unanimous.  The court additionally noted the term of the conservatorship is limited (*Conservatorship of Ben C.*, *supra*, 40 Cal.4th at pp. 541, 543), and the conservatee can petition the court in the interim to reconsider its decision (*id*. at p. 543).  This provides an "immediate avenue" for reconsideration of the trial court's decision, a protection a criminal does not have.  (*Ibid*.)  Another difference is that the commitment of a conservatee """"may not reasonably be deemed punishment either in its design or purpose."'  [Citation.]"  (*Ibid*.)

In *People v. Taylor*, *supra*, 160 Cal.App.4th at page 308, the appellate court found the "*Anders/Wende* review requirements" do not apply to appeals from orders committing an indigent under the Mentally Disordered Offender Act (MDO Act) (§ 2960 et. seq.).  Under the MDO Act, a criminal defendant who is a dangerous mentally ill individual (MDO) can be civilly committed as a condition of parole.  (§ 2960.)  "'To maintain a determinate system will inevitably cause the release of some mentally ill inmates who constitute a significant threat to public safety.  This commitment will provide a mechanism for placing these mentally ill inmates in the mental health system for appropriate treatment which will increase the protection of the public.'  [Citation.]" (*People v. Allen* (2007) 42 Cal.4th 91, 97.)

The *Taylor* court, after concluding the holdings in *Sade C.* and *Conservatorship of Ben C.*, compelled it to find *Anders* applies only in a first appeal of right in a criminal matter (*People v. Taylor*, *supra*, 160 Cal.App.4th at p. 312), applied the three-pronged test set forth in *Sade C.* to determine whether due process required extending use of the *Anders* procedure in appeals in MDO Act matters (*id*. at pp. 312-313).  It found the civil committee's private interest is in remaining free from a civil commitment, but that that interest is no greater than his or her interest in receiving treatment for his or her "severe mental disorder."  (*Id*. at p. 312.)  The state's interest in protecting the public from a dangerous mentally ill individual who poses a substantial

10

danger to the public if released was characterized as "strong." (*Ibid*.) We note the state has an additional important interest in treating the individual with the severe mental disorder. (*Ibid*.)

In assessing the risk involved in not applying the *Anders* procedures, the court noted "numerous procedural protections against unwarranted commitments." (*People v. Taylor*, *supra*, 160 Cal.App.4th at p. 312.) These protections include the MDO's right to a hearing before the parole board prior to imposition of any required treatment, the burden of proof at such a hearing is not on the MDO, the MDO has the right to have two independent mental health professionals appointed (*ibid.*), the MDO may petition for a hearing in the superior court, and section 2966 gives the MDO the right to counsel and a jury trial (*People v. Taylor*, *supra*, 160 Cal.App.4th at pp. 312-313.) The party seeking the civil commitment must bear the burden of proving the individual qualifies as an MDO beyond a reasonable doubt, and the jury determination must be unanimous. (*Ibid*.) Additionally, the term of the civil commitment is limited (one year), but the Department of Mental Health may request discontinuation of treatment if the committee's "mental disorder is in remission and can be kept in remission without further treatment." (*Ibid*.) On the other hand, if an extension of the treatment period is sought, the MDO again has a right to a trial and an appeal, with counsel, if extension is granted. Lastly, the court noted appeals in MDO matters are "assigned to a relatively small pool of well-qualified attorneys who competently discharge their duties." (*Ibid*.) After evaluating the factors enunciated in *Sade C*., the *Taylor* court concluded due process did not require extending the *Anders* procedure in MDO appeals. (*People v. Taylor*, *supra*, 160 Cal.App.4th at p. 313.)

Less than two months after *Taylor* was decided, another Court of Appeal decided *People v. Dobson*, *supra*, 161 Cal.App.4th 1422. The defendant in *Dobson* had been charged with vehicle theft and was found not guilty by reason of insanity. (*Id*. at p. 1425.) Because the defendant had four "strike" convictions, his maximum term of

11

confinement was set at 25 years to life.  (*Id*. at pp. 1425-1426.)  The defendant subsequently filed a petition in the superior court for release, contending his sanity had been restored.  The superior court denied the petition, finding the defendant "would pose a danger to the health and safety of others due to a mental defect, disease, or disorder." (*Id*. at p. 1426.)  The defendant appealed and appellate counsel asked the court to independently review the record for errors after he was unable to find any meritorious issues.  (*Ibid*.)

The *Dobson* court found *Anders* did not require the relief requested because *Anders* limits its procedure to a criminal defendant's first appeal as of right.  (*People v. Dobson*, *supra*, 161 Cal.App.4th at p. 1428.)  Using the *Sade. C.* three-pronged test, the court declined to extend the *Anders* procedure to the appeal in a restoration of sanity proceeding.  (*People v. Dodson*, *supra*, 161 Cal.App.4th at pp. 1436-1437.)  The court also rejected an equal protection argument that insanity acquitees are similarly situated for purposes of requiring an extension of the *Anders/Wende* procedure.  (*Id*. at p. 1438.)

We agree with these courts and find the *Anders* procedure does not apply to an appeal from an extension of an NGI's commitment.  *Anders* only requires its procedure to be followed in a criminal defendant's first appeal as a matter of right.  (*Anders v. California*, *supra*, 368 U.S. 738; *Pennsylvania v. Finley*, *supra*, 481 U.S. at p. 555.)  The petition to extend an NGI's commitment is civil in nature and directed toward treating the NGI, not punishing him or her.  (*People v. Wilder* (1995) 33 Cal.App.4th 90, 99.)  Indeed, the fact that an NGI's commitment has been extended "places an affirmative obligation on the treatment facility to provide treatment for the underlying causes of the person's mental disorder."  (§ 1026.5, subd. (b)(11).) In addition, our Supreme Court's decision in *Conservatorship of Ben. C.*, *supra*, 40 Cal.4th 529, that due process does not require applying the *Anders* procedure in a conservatorship appeal, compels us to conclude due process does not require adoption of the *Anders* procedure in an appeal from a judgment extending a NGI's civil commitment.

12

Martinez's private interest in this matter is the avoidance of confinement for his mental illness. Granted the civil commitment "constitutes a significant deprivation of liberty" (*Addington v. Texas* (1979) 441 U.S. 418, 425), Martinez's interest in avoiding the commitment is no greater than his interest in receiving treatment for his "severe mental disorder." (*People v. Taylor*, *supra*, 160 Cal.App.4th at p. 312.)

The state has a compelling interest in treating the mentally ill individual and in protecting society from an individual who poses a danger to others because of his mental illness. (*People v. McKee* (2010) 47 Cal.4th 1172, 1210.) The state's interest is treating the mentally ill individual is *parens patriae*. (See *Addington v. Texas*, *supra*, 441 U.S. at p. 426 [*parens patriae* interest in providing care for those who cannot care for themselves].) Additionally, the state has an interest in an accurate and just resolution of Martinez's appeal, and in reducing the costs and burden of the appeal. (*In re Sade C.*, *supra*, 13 Cal.4th at p. 989.)

Just as there are protections in place in conservatorship proceedings to guard against an erroneous conclusion in conservator proceedings (*Conservatorship of Ben C.*, *supra*, 40 Cal.4th at p. 542), so too are there procedures in place to protect one committed to a state hospital pursuant to section 1026.5. Consequently, the risk that failure to adopt *Anders*'s procedure in appeals from a civil judgment extending an NGI's civil commitment will result in an erroneous resolution on appeal is negligible. When a petition to extend an NGI's commitment is filed, the committee is notified of his or her right to be represented by counsel and of the right to a jury trial. (§ 1026.5, subd. (b)(3).) The same section provides the NGI is entitled to discovery. (*Ibid.*) By statute, but not by constitutional mandate, the NGI is "entitled [in the extension proceeding] to the rights guaranteed under the federal and State Constitutions for criminal proceedings." (§ 1026.5, subd. (b)(7).) This includes the right not to testify at the hearing. (*Hudec v. Superior Court* (2015) 60 Cal.4th 815, 818.) The NGI also has the right to the "[a]ppointment of necessary psychologists or psychiatrists" to assist in his or her

13

opposition to the petition.  (§ 1026.5, subd. (b)(7).)  Before an extension may be ordered, the jury must unanimously find beyond a reasonable doubt the NGI meets the requirements for an extension of his or her commitment.  (*Hudec v. Superior Court*, *supra*, 60 Cal.4th at p. 828.)  Even then, the extension is for a limited period of time, two years.  (§ 1026.5, subd. (b)(8).)  During the NGI's confinement, the medical director of the state hospital in which the NGI is confined must file written reports with the court, "setting forth the status and progress of the [NGI]."  (§ 1026, subd, (f).)  The record on appeal in this matter is replete with quarterly reports on Martinez and filed with the superior court.  A favorable report may result in placement on outpatient status.  (§ 1602, subd. (a)(2).)  The NGI or the medical director of the state hospital where the NGI is committed may petition the court on a claim of restoration of sanity.  (§ 1026.2, subd. (a).)  Finally, if the jury's verdict is adverse to the NGI, he or she may appeal and has the right to appointed counsel on appeal.  The appointed attorneys handling such cases are experienced and faithfully execute their duties to their clients on appeal.  Martinez's extremely competent counsel is a prime example.

   With all these protections in place, we conclude due process does not require the adoption of the *Anders* procedure here.  Accordingly, because the *Anders* procedure is not required by due process, appointed counsel has been unable to find any arguable issue on appeal and Martinez has not filed a supplemental brief on his own behalf after having been given the opportunity to do so, we dismiss the appeal as abandoned.  (Cf. *People v. Serrano* (2012) 211 Cal.App.4th 496, 498 [dismissal after finding *Anders* does not apply to appeal in a postconviction proceeding].)

14

## III

## DISPOSITION

The appeal is dismissed.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.