Filed 8/17/20  P. v. Reyes CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B295323 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. ZM012732) |
| v. | |
| AURELIO REYES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert S. Harrison, Judge.  Reversed with directions.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Colleen M. Tiedemann and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Aurelio Reyes appeals from the judgment extending his commitment to a state hospital under Penal Code section 1026.5, subdivision (b), following a court trial. Reyes, who represented himself at the trial, contends several of the trial court's rulings violated his due process rights. We conclude that the trial court violated Reyes's due process rights by denying his requests to call witnesses and to testify and that these errors were not harmless beyond a reasonable doubt. Therefore, we reverse with directions for a new trial.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The People Petition To Extend Reyes's Commitment*

In the late 1990s Reyes was found not guilty of manslaughter by reason of insanity, and the court committed Reyes to a state hospital for treatment under Penal Code section 1026.[1] Section 1026.5, subdivision (a)(1), provides a person committed to a state hospital under section 1026 "may not be kept in actual custody longer than the maximum term of commitment," which is defined as the "longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted . . . ." However, section 1026.5, subdivision (b), provides a court may extend the person's commitment for a period of two years upon the petition of the prosecuting attorney if the person has been committed for a felony and "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." (§ 1026.5, subds. (b)(1), (b)(2), (b)(8); see *People v. Martinez* (2016)

---

[1] Statutory references are to the Penal Code.

2

246 Cal.App.4th 1226, 1239.) The People have filed multiple successful petitions under section 1026.5, subdivision (b), to extend Reyes's commitment for additional two-year terms. On April 13, 2018 the People filed a new petition to extend Reyes's commitment for two years. Reyes waived his right to a jury trial.

> B.     *The People Present Their Case*

On the first day of trial Reyes asked to represent himself under *Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525] (*Faretta*). The People did not object to the request, but asked that, before the court granted a continuance, the court allow them to call two witnesses, Remeishia Mims and Dr. Silvia Torrez, that day. Reyes stated that he had asked his attorney to request a 30-day continuance, but that the attorney refused. Reyes also said his attorney would not call the witnesses Reyes wanted to call. Reyes made clear, however, he was not trying to delay the proceedings. The trial court allowed the People to call the two witnesses they wanted to call that day, stating: "There's a concern that these [*Faretta*] motions are made for the purpose of delay. . . . I don't see a need to stop today's proceedings. We have to continue the proceedings anyway and we're going to—and we'll continue for your witnesses when they're available."

Before the trial court relieved him, counsel for Reyes stated that he had received a police report that day from Patton State Hospital where Reyes was committed and that the prosecutor would have to give Reyes a copy of the report so Reyes would have it to cross-examine witnesses. The trial court arranged with the prosecutor to send a copy of the report by fax to Reyes at the hospital.

Before the People called their first witness, and in response to the trial court's inquiry, Reyes told the court he intended to call several witnesses, including a psychiatrist named Dr. Panadero and a clinician named Dr. Ronowaski. Reyes also provided the address of the prison where the two doctors worked. When the prosecutor asked Reyes to make an offer of proof, Reyes stated that both Dr. Panadero, who treated Reyes for six months earlier that year (2018), and Dr. Ronowaski would testify he did not have a mental illness.

The People's first witness was Mims, a psychiatric technician at Patton State Hospital. Mims described an incident in September 2017 where Reyes attacked another psychiatric technician, for which the police arrested Reyes. During Mims's testimony the prosecutor introduced two photographs showing the psychiatric technician's injuries from the attack.

The People's second witness was Dr. Torrez, a psychologist with the Department of Corrections and Rehabilitation who interviewed Reyes in October 2018 for approximately two and a half hours. Dr. Torrez opined, based on her observations during the interview and Reyes's documented mental health history, Reyes had schizoaffective disorder, bipolar type, and antisocial personality disorder. Dr. Torrez further testified that Reyes had no insight into his mental illnesses and that Reyes denied his illness for reasons "border[ing] on delusional," such as believing Patton State Hospital lied about his condition to make money. Dr. Torrez also testified Reyes posed a "significant danger to others."

The prosecutor did not finish her direct examination of Dr. Torrez on the first day of trial, and the People called her on the second day of trial, which occurred 12 days later. Before

4

Dr. Torrez testified the second day, however, Reyes stated he had not received a copy of a report Dr. Torrez submitted in support of the People's petition. The court asked Dr. Torrez to arrange to have someone provide Reyes with a copy of the report. Reyes did not request a continuance to review the report and proceeded to cross-examine Dr. Torrez after the prosecutor finished her examination.

On the third day of trial (which was two days later), the People called Dr. Jannavie Hickman, a clinical psychologist, and Dr. Gordon Plotkin, an expert in psychiatry. Dr. Hickman had six or seven therapy sessions with Reyes, beginning in September 2018. Like Dr. Torrez, Dr. Hickman opined, based on her sessions with Reyes, that Reyes suffered from schizoaffective disorder, bipolar type. Dr. Hickman also testified Reyes denied having a mental illness.

Dr. Plotkin interviewed Reyes for an hour and a half in September 2018. As had Dr. Torrez and Dr. Hickman, Dr. Plotkin concluded Reyes suffered from schizoaffective disorder. Dr. Plotkin also opined Reyes had "methamphetamine use disorder" and antisocial personality disorder. Dr. Plotkin also stated Reyes had no insight into his mental illnesses, had no intention of treating his mental illnesses, and posed a "substantial danger of physical harm to others."

Before the end of the third day of trial, Reyes asked the court to recall Dr. Torrez, claiming that he "did not receive her report" and "barely had time to go over" it and that he "was not prepared to cross-examine her." The court said it would "take that up at another proceeding" because trial had already gone longer than scheduled that day. During the fourth and final day

of trial, over a month later, Reyes did not ask the court to recall Dr. Torrez.

      C.    *Reyes's Attempts To Testify and Call Witnesses*

The People rested after Dr. Plotkin completed his testimony on the fourth day of trial.[2] Reyes and the trial court had the following exchange:

"The Court: It is your opportunity to call witnesses. If you choose to testify then you have waived your right to not testify. That means . . . the People will be able to cross-examine you fully.

"[Reyes]: That's fine. I will testify, Your Honor. I will testify.

"The Court: So then we'll have to resume this matter. We're going to have to transfer you down to Los Angeles to finish the case.

"[Reyes]: That's fine with me."

Reyes asked about the logistics for calling witnesses. The court responded: "You did not furnish the court with the information to issue a subpoena . . . . You didn't give us the correct names. That was the problem." When Reyes said he would "do it now," the trial court interrupted and asked him (again) for an offer of proof for his witnesses. Reyes stated that Dr. Panadero would testify Reyes did not have a psychiatric illness of any kind and that his treating psychologist

---

[2] Dr. Plotkin testified on both the third and fourth days of trial.

Dr. "Lowoski"[3] would testify Reyes did "not suffer from a diagnosis of mental illness" and did "not have schizoaffective disorder." Reyes then made a motion to dismiss the People's petition and a motion to disqualify the trial judge, both of which the court denied.

After Reyes began arguing about the trial judge's decision not to disqualify himself, the court asked Reyes whether he was "waiving" (presumably, his right to testify) and resting, to which Reyes responded, "No." Eventually, Reyes stated, "Your Honor, I'll go ahead and I'll transfer to Los Angeles and call my witnesses." The trial court stated: "At this point, all of the witnesses you have are only . . . from 2008, well before the assault on the staff member. . . . So at this point they're not relevant." When Reyes reiterated that Dr. Panadero had recently treated him and would testify Reyes did not "suffer from psychosis," the trial court said, "But that is not what the treating psychologist said. Your treating psychologist . . . testified already that you do have a mental disorder."[4] Ignoring Reyes's request to testify, the trial court stated: "Okay. The court deems the matter submitted then. There are no witnesses. The court believes that Dr. Panadero would not testify according to the way the witnesses testified." Reyes stated, "I have not had a chance to call my witnesses, Your Honor."

---

[3]     Reyes said Dr. Lowoski (or at least the court reporter transcribed that name), but he probably meant Dr. Ronowaski.

[4]     The court apparently was referring to Dr. Hickman, who said she was Reyes's "assigned clinical psychologist."

7

The trial court found beyond a reasonable doubt Reyes had a mental illness that made him a substantial danger to others. The court extended Reyes's commitment to July 25, 2020. Reyes timely filed a notice of appeal.

## DISCUSSION

A. *The Trial Court Violated Reyes's Due Process Rights by Refusing To Allow Him To Call Witnesses*

The right "to call witnesses in one's own behalf [has] long been recognized as essential to due process." (*Chambers v. Mississippi* (1973) 410 U.S. 284, 294 [93 S.Ct. 1038]; accord, *People v. Aguilera* (2020) 50 Cal.App.5th 894, 910; see *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 367 [Sixth Amendment right "'to have compulsory process for obtaining witnesses'" in a criminal trial "is applicable to the states under the Fourteenth Amendment's due process clause"]; *People v. Love* (1977) 75 Cal.App.3d 928, 939 ["the defendant's right to present witnesses in his own defense is one of his most fundamental rights"].)[5] "A defendant claiming a violation of this right must

---

[5] Although "proceedings to extend commitments under section 1026.5 are essentially civil in nature" (*People v. Dobson* (2008) 161 Cal.App.4th 1422, 1435), section 1026.5, subdivision (b)(7), provides that the defendant in a proceeding to extend a commitment for a defendant found not guilty by reason of insanity "shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings." As the Supreme Court explained in *Hudec v. Superior Court* (2015) 60 Cal.4th 815, "in providing broadly that . . . the individual would have 'the rights guaranteed under the federal and State

8

establish both that he was deprived of the opportunity to present material and favorable evidence and that the deprivation was arbitrary or disproportionate to any legitimate purpose." (*Bryant, Smith, and Wheeler*, at p. 367; accord, *Aguilera*, at p. 911.)

The trial court violated Reyes's due process rights by, suddenly and without notice, refusing to permit Reyes to subpoena and call witnesses, deeming the matter submitted, and ruling in favor of the People.  There is no question that, had Reyes's witnesses testified he did not have a mental illness (as Reyes twice said they would), the testimony would have been highly material and favorable to Reyes's defense.  (See *People v. Cunningham* (2001) 25 Cal.4th 926, 998-999 [defendant has a right "to present all relevant evidence of *significant* probative value to his or her defense"]; *People v. Reardon* (2018) 26 Cal.App.5th 727, 737 [same]; *People v. Williams* (1996) 46 Cal.App.4th 1767, 1777 ["a trial court's authority to exclude relevant evidence must yield to a defendant's right to a fair trial"]; *People v. Burrell-Hart* (1987) 192 Cal.App.3d 593, 599 ["all of [the defendant's] pertinent evidence should be considered by the trier of fact"]; *People v. De Larco* (1983) 142 Cal.App.3d 294, 305 ["Inclusion of relevant evidence is tantamount to a fair trial."].)

---

Constitutions for criminal proceedings[ ]' [citations], the Legislature chose not merely to codify . . . particular rights" but "to state a broader rule that" not guilty by reason of insanity "commitments call for procedural protections otherwise applicable in criminal cases."  (*Id.* at p. 828.)  The People do not contend the due process rights Reyes argues the trial court violated do not apply to such proceedings.

9

The trial court's reason for refusing to allow Reyes to subpoena his witnesses was that the court "believed" they either would testify similarly to the People's witnesses or would not testify according to Reyes's offer of proof. The court even responded to Reyes's offer by stating that Dr. Hickman already testified Reyes had a mental disorder. That was not a legitimate ground for refusing to allow Reyes to call his witnesses. While a trial court has "'discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice'" (*People v. Ghobrial* (2018) 5 Cal.5th 250, 283), the court cannot exclude evidence favorable to the defendant simply because "the prosecution's case is strong enough" (*Holmes v. South Carolina* (2006) 547 U.S. 319, 329, 331 [126 S.Ct. 1727]; see *id.* at p. 331 ["by evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt"]). Doing so "violates a criminal defendant's right to have "'a meaningful opportunity to present a complete defense.'"" (*Ibid.*; see *Crane v. Kentucky* (1986) 476 U.S. 683, 690 [106 S.Ct. 2142]; *People v. Ahmed* (2018) 25 Cal.App.5th 136, 144.) By assuming Reyes's witnesses would not offer testimony favorable to his defense, the trial court effectively precluded Reyes from presenting any defense, let alone a complete one. (See *People v. Barquera* (1957) 154 Cal.App.2d 513, 517-518 [trial court denied the defendant a fair trial by stating "'I don't have to let you offer any'" evidence and repeatedly stating defendant "had no defense"].)

The People do not argue it was proper for the trial court to preclude Reyes from calling any witnesses simply because the court did not believe Reyes's offer of proof. Instead, they argue

the testimony of the witnesses Reyes wanted to call was not relevant because Reyes's witnesses treated him over "a decade before the attack on the hospital employee." The court did say this, but the record does not support the court's statement or the People's argument.[6] In his offer of proof, Reyes stated Dr. Panadero treated him "up until about a month and a half ago." Nor do the People cite evidence suggesting the witnesses had not treated Reyes since 2008.

The People also argue Reyes did not give the trial court sufficient information to issue subpoenas for his witnesses. The record does not support that argument either. The trial court asked Reyes for the names and addresses of his proposed witnesses so the court could issue subpoenas. Reyes provided that information. The court did not tell Reyes the information he provided was (purportedly) insufficient until after the People rested on the last day of trial, and there is no evidence anyone else informed Reyes the information he provided for the subpoenas was insufficient. There certainly was no delay on Reyes's part in seeking to subpoena witnesses. At the very least, the court should have given Reyes an opportunity to provide any additional information the court may have needed to issue the subpoenas.

---

[6] It appears the trial court assumed Reyes's witnesses treated him in 2008 because Reyes submitted medical records from 2008 that he contended showed he did not have a mental illness. But the witnesses Reyes sought to call were not the authors of, or mentioned in, those records.

11

B.    *The Trial Court Violated Reyes's Due Process Rights by Refusing To Allow Him To Testify*

"A defendant has a fundamental right to testify on his own behalf." (*People v. Lancaster* (2007) 41 Cal.4th 50, 100; see *Rock v. Arkansas* (1987) 483 U.S. 44, 49 [107 S.Ct. 2704] ["it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense"].)  "It is one of the rights that are 'essential to due process of law in a fair adversary process.'" (*Rock*, at p. 51; accord, *People v. Johnson* (1998) 62 Cal.App.4th 608, 617.)

Reyes unequivocally stated he wanted to testify.  When the trial court informed Reyes that if he chose to testify the People could cross-examine him, Reyes stated:  "That's fine.  I will testify, Your Honor.  I will testify."  When the trial court asked Reyes whether he was waiving his right to testify and resting, Reyes stated, "No."  By ignoring Reyes and deeming the matter submitted, the trial court violated Reyes's right to testify.

Citing *People v. Johnson* (2018) 6 Cal.5th 541, the People argue Reyes forfeited his right to testify by engaging in disorderly and disruptive behavior.  It is true the "right to testify . . . can be forfeited by disorderly or disruptive behavior that causes the defendant to be barred from the courtroom." (*Id.* at p. 569.)  For example, in *Johnson* the trial court excluded the defendant from the courtroom because of repeated disruptive behavior that included "violently attack[ing] his attorney, in full view of the court and the prospective jurors," "cursing and spitting" at his attorney, and banging and kicking on his cell door from "a lockup adjacent to the courtroom" during hearings. (*Id.* at pp. 560-561.)  Nevertheless, the court initially intended to let the defendant testify by video.  However, after the trial court "repeatedly"

12

informed the defendant "his testimony would proceed in a question and answer format," the defendant refused to comply and stated, "I'm going to do what I think is best on my own behalf." (*Id.* at p. 570.) The trial court also allowed counsel for the defendant to do a "dry run" outside of the presence of the jury "to see how defendant was going to behave" during examination, during which the defendant "offer[ed] unsupported legal conclusions, referred to alleged facts not in evidence, and declined to actually answer any questions . . . ." (*Ibid.*) Only then did the court rule the defendant forfeited his right to testify.

But the trial court here did not preclude Reyes from testifying because he behaved disruptively. There is no evidence Reyes was disruptive, and the trial court made no finding he was. And the record shows Reyes's conduct was not remotely similar to the defendant's conduct in *Johnson*. Reyes conducted himself in an orderly and respectful manner throughout the trial. Reyes argued with the trial judge's decision not to disqualify himself and stated he "want[ed] a new judge." But when the trial court indicated it was going to deem the matter submitted unless Reyes sought to introduce evidence, Reyes moved on and said, "I'll go ahead and I'll transfer to Los Angeles and call my witnesses." Reyes's request for a new judge was, at worst, a minor irritation; it certainly did not rise to the level of warranting a complete denial of his fundamental rights to testify and call witnesses. (See *People v. Johnson, supra*, 6 Cal.5th at pp. 555-556 ["What justifies barring a defendant from the trial . . . is the defendant's insistence on misconduct 'so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.'"]; see also *People v. Banks* (2014) 59 Cal.4th 1113, 1180 ["'Once lost, the right to be present can, of

13

course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.'"], disapproved on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 391.)

C.    *The Trial Court's Violations of Reyes's Constitutional Rights Were Not Harmless Beyond a Reasonable Doubt*

The People argue that, even if the trial court violated Reyes's due process rights, Reyes did not suffer prejudice because "there was overwhelming evidence that [Reyes] had no insight into his mental illness and he posed a significant danger to other people." We review the trial court's denial of a defendant's right to testify or call witnesses under the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18, 24. (See *People v. Allen* (2008) 44 Cal.4th 843, 871 [applying the *Chapman* standard to a violation of the defendant's right to testify]; *People v. Gonzales* (1994) 22 Cal.App.4th 1744, 1759 [applying the *Chapman* standard to a "violation of the compulsory process clause"].) "Under the *Chapman* harmless error standard, the burden is on the People, not the defendant, to demonstrate that the violation of the defendant's federal constitutional right was harmless beyond a reasonable doubt." (*People v. Cutting* (2019) 42 Cal.App.5th 344, 349; see *In re I.F.* (2018) 20 Cal.App.5th 735, 781.)

Because "issues of credibility are for the [factfinder] to resolve . . . . 'it is only the most extraordinary of trials in which a denial of the defendant's right to testify can be said to be harmless beyond a reasonable doubt.'" (*People v. Allen*, *supra*, 44

14

Cal.4th at p. 872.) Here, the People presented testimony from several mental health professionals that Reyes suffered from mental illness and was a substantial danger to others, and a hospital employee testified Reyes recently attacked another hospital employee. But even if Reyes's testimony alone would not have had much of an impact on the trial court's ultimate finding (and we cannot say Reyes's testimony would not have had at least some evidentiary value), the same cannot be said about the testimony the court excluded from the witnesses Reyes intended to call. Had a mental health professional who recently treated Reyes testified Reyes did not have a mental illness, there would have been conflicting testimony on the ultimate question the trial court had to resolve—whether, "by reason of a mental disease, defect, or disorder," Reyes "represent[ed] a substantial danger of physical harm to others." (§ 1026.5, subd. (b).) The trial court would have had to weigh the credibility of all the witnesses, including the credibility of Reyes and his witnesses. In making its ruling, the court said to Reyes, "The court doesn't have any proof on your side that you have no mental illness," but that was because the court did not allow Reyes to put on his side.

The People's argument that nothing Reyes or his witnesses might have said or done in Reyes's defense would have made any difference reflects a cramped and cynical view of our constitutional rights. (See *People v. Hernandez* (2009) 172 Cal.App.4th 715, 722 [the "'right to be heard does not depend upon an advance showing that one will surely prevail at the hearing'"]; *Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 205 ["'"it is no answer to say . . . due process of law would have led to the same result"'"].) Because the trial court did not allow Reyes to call even one of the witnesses he

anticipated (and twice represented in response to requests for an offer of proof) would testify on highly probative issues, we cannot say the constitutional violations here were harmless beyond a reasonable doubt.  Reyes is entitled to a retrial.  (See, e.g., *People v. Force* (2019) 39 Cal.App.5th 506, 521 [prosecutor's interference with the defendant's right to testify and the trial court's erroneous exclusion of the defendant's evidence required a retrial]; *People v. Cortes* (2011) 192 Cal.App.4th 873, 912-913 [trial court's improper exclusion of the defendant's expert witness testimony required a retrial].)[7]

---

[7]     Reyes argues the trial court erred in denying him a continuance to allow him to review the police report of the incident at Patton State Hospital and Dr. Torrez's report before cross-examining Mims and Dr. Torrez.  If the prosecution elects to call Mims and Dr. Torrez on retrial, Reyes will have an opportunity to question them on these and any other relevant topics.

## DISPOSITION

The judgment is reversed with directions for a new trial. At the new trial, the trial court is to allow Reyes to subpoena witnesses, call his witnesses to testify at trial, and testify in his defense.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.

17