Filed 2/22/21

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

<table>
<tr><td>

THE PEOPLE,

    Plaintiff and Respondent,

v.

JAMES FREEMAN,

    Defendant and Appellant.

</td><td>

A160437

(Sonoma County
Super. Ct. No. PRS-1003981)

</td></tr>
</table>

James Freeman appeals from an order finding that he violated a condition of his Post Release Community Supervision (PRCS). Freeman's appellate counsel has filed a brief that raises no issue for appeal and asks this court for an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). We conclude that Freeman is not entitled to *Wende* review and, in the unpublished portion of this opinion, that the issues he raises in a pro se supplemental brief lack merit. Accordingly, we affirm.

**BACKGROUND**

In February 2017, Freeman sustained convictions in Marin County for assault with a deadly weapon (Pen. Code, § 245, subd. (a)(4); statutory references are to the Penal Code) and for buying or receiving a stolen vehicle

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of section II.

1

or equipment (§ 495d, subd. (a)).  In June 2018, Freeman was released on PRCS in Sonoma County.

Prior to the incident that led to this appeal, Freeman's PRCS was revoked and reinstated several times.  In December 2018, he was charged with possession of weapons and methamphetamine, admitted PRCS violations in exchange for dismissal of criminal charges, was required to serve 110 days in County jail, and had his PRCS reinstated.  In July 2019, Freeman was arrested in connection with a hit and run car accident, admitted a PRCS violation, received a 180-day jail term, and had his PRCS reinstated.  In November 2019, Freeman was arrested for possession of a replica handgun, a fixed blade knife, and a methamphetamine pipe, he again admitted violating PRCS, served a short jail term, and had his PRCS reinstated.

On February 7, 2020, the Probation Department filed a petition for revocation on the ground that Freeman violated a condition of PRCS requiring him to submit to electronic monitoring at the direction of his probation officer.  According to the petition, Freeman was placed on electronic monitoring on January 24 but stopped charging his monitor, which caused the battery to die on February 2.  Consequently, a warrant was issued on February 4 and Freeman was arrested on February 6, 2020.

Recommending that the court once again revoke PRCS, the Department emphasized Freeman's pattern of noncompliance with PRCS requirements despite being subjected to multiple "[f]lash" incarcerations.  According to the Department, since Freeman was released from prison in 2018, he "has committed multiple new law violations, possessed weapons and controlled substances, and absconded from supervision."  The Department

2

requested that the court impose a 180-day jail term for the current violation and that PRCS be reinstated.

Freeman did not admit the PRCS violation, so a hearing was set for March 13, 2020. At the hearing, the People requested a continuance, acknowledging they were not prepared to proceed. The court denied the continuance, dismissed the petition, and reinstated Freeman on PRCS. That same day, the Department filed another petition re-alleging that Freeman had violated his electronic monitoring condition. Therefore, Freeman remained in custody, and, on March 17, his PRCS was summarily revoked. However, on April 17, Freeman was released from custody and reinstated on PRCS pending a hearing on the revocation petition, which was held on June 12, 2020.

At the revocation hearing, the People presented evidence that Freeman violated PRCS by failing to charge his electronic monitor in early February 2020, causing it not to function for several days. Their primary witness was Gary Sewell, a senior analyst at a private company that assists Sonoma County in administering its electronic monitoring program. Sewell described how the electronic monitor tracks the movements of the client and generates data that is reported to his company and then relayed to the client's probation officer. Sewell also testified that clients are trained how to use the monitor, how to charge and replace the monitor's removable battery, and how often the battery needs to be changed. Users also receive instruction about "alerts" that the monitor issues to signify when the battery is too low, and they are given a telephone number to call if the monitor stops functioning for any reason.

The People also presented evidence regarding Freeman's electronic monitor, which showed that it was affixed to Freeman's ankle on January 24,

3

2020, and was fully charged as of January 31. However, on February 1, a battery that was not fully charged was installed in the device, and the next day a battery was installed that had zero percent charge. On February 4, 2020, the reserve battery inside the device was depleted and the monitor stopped functioning.

Freeman did not testify at the revocation hearing but defense counsel argued the petition should be denied based on evidence that Freeman had been changing the batteries in his device during the period prior to his arrest. Counsel argued that this evidence supported a finding that the batteries malfunctioned and that any violation of the PRCS condition was not willful.

After the matter was submitted, the court made an initial finding that Freeman violated PRCS by failing to maintain the battery in his electronic monitor. The court's ruling turned on evidence that Freeman knew or should have known that the battery was dead and that his device was not sending a signal. Evidence that Freeman had used the monitor since January 24 showed that he had charged the batteries properly multiple times because the device was fully operational prior to February 1. Further, Sewell's testimony showed that users receive an alert when their battery runs too low, and have ample opportunity to correct the problem before the device stops transmitting.

Next, the court turned to the recommendation to impose a 180-day jail term. The probation officer reported that Freeman had accrued 72 days in custody since the initial revocation petition was filed and would also be entitled to 72 days of conduct credit, which meant Freeman would be required to serve an additional 18 days to complete the 180-day term. Defense counsel argued the time Freeman had already served was sufficient penalty for his violation. However, the People disagreed because this was not

4

an isolated incident. Freeman's probation officer, who was at the hearing, confirmed that after Freeman was released from custody in April (pending completion of the revocation hearing) there had been ongoing issues regarding his failure to keep his monitor fully charged.

The court elected to impose the full 180-day term, and emphasized to Freeman that his PRCS conditions specifically required him to "maintain that monitor in a working, functional order at all times." The court gave Freeman 144 credit days and ordered that after Freeman completed the jail term, he was to be released on PRCS, which was to be reinstated on all previous terms. In closing, the court reiterated to Freeman that he needed to keep his monitor charged as that was "a really specific term of [his] release on PRCS."

**DISCUSSION**

## I.  This Appeal Is Not Subject to *Wende* Review

California's *Wende* procedure was adopted to fulfill the requirements of *Anders v. California* (1967) 386 U.S. 738 (*Anders*). (*People v. Kelly* (2006) 40 Cal.4th 106, 117–118; *Wende, supra*, 25 Cal.3d at pp. 441–442.) *Anders* addresses the constitutional duty of appointed counsel to represent an indigent criminal defendant in his or her first appeal of right from a judgment of conviction. In that context, the United States Supreme Court held that effective assistance of counsel cannot be assured when court-appointed appellate counsel is allowed simply to move to withdraw when unable to identify a meritorious issue. (*Anders*, at p. 744.) Instead, appointed counsel must file a brief referring to matters that might arguably support an appeal and the appellate court must independently review the record to decide whether the appeal is frivolous. (*Ibid*.)

5

Because the federal constitutional right to counsel in a criminal case "extends to the first appeal of right, and no further," the United States Supreme Court has refused to extend *Anders* to discretionary appeals or to appeals from orders in postconviction proceedings that seek to collaterally attack an underlying conviction. (*Pennsylvania v. Finley* (1987) 481 U.S. 551, 554–555 (*Finley*).) *Finley* reasons that *Anders* "establishe[s] a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel," and, "since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, a fortiori, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process." (*Finley*, at pp. 554–555, italics omitted.)

Applying *Finley*, California courts have declined to require *Wende* review in any appeal other than a first appeal of right from a judgment of criminal conviction. For example, the California Supreme Court has held that *Anders* does not require appellate courts to undertake a *Wende* review of orders in conservatorship proceedings or dependency proceedings because such appeals are not first appeals of right from a criminal conviction. (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 535–537; *In re Sade C.* (1996) 13 Cal.4th 952, 982–983.)

Our state Supreme Court has not addressed whether *Wende* applies to criminal appeals other than a direct appeal from the judgment of conviction. Published decisions by our courts of appeal uniformly agree that *Wende/Anders* does not require independent review of appeals from post-judgment orders in criminal proceedings, though they are split on whether in certain contexts a court should nonetheless exercise discretion independently to review a summary denial. (*People v. Serrano* (2012) 211 Cal.App.4th 496,

503; *People v. Cole* (2020) 52 Cal.App.5th 1023, 1028–1029, review granted Oct. 14, 2020, S264278 (*Cole*); *People v. Flores* (2020) 54 Cal.App.5th 266, 269 (*Flores*); *People v. Scott* (2020) 58 Cal.App.5th 1127; see also *People v. Kisling* (2015) 239 Cal.App.4th 288, 290; *People v. Martinez* (2016) 246 Cal.App.4th 1226, 1238.)[1]

*Serrano*, for example, refused to conduct *Wende* review of an order denying a motion to vacate a conviction under Penal Code section 1016.5. (*Serrano, supra,* 211 Cal.App.4th at pp. 499 & 503.) The court reasoned that because a criminal defendant is entitled to *Wende* review only in "a first appeal of right" from a criminal conviction, he or she is not entitled to such review "in subsequent appeals, including collateral attacks on the judgment." (*Id.* at p. 503.) In such cases, the court found, the appeal must be dismissed as abandoned if neither the defendant nor appointed counsel raises any claims of error. (*Id.* at pp. 503–504.)

In the present case, Freeman appeals from an order revoking and reinstating PRCS. This appeal is not subject to *Wende* review under the authority summarized above because it is not a direct appeal from a judgment of conviction. Revocation proceedings are "constitutionally distinct" from criminal prosecutions. (*In re Eddie M.* (2003) 31 Cal.4th 480, 504.) Parole and probation revocation proceedings "in and of themselves, do not concern guilt of any criminal charges, or risk any increase in the maximum

---

[1] Courts disagree about whether independently to review summary denials of a section 1170.95 petitions. (Compare *Cole, supra,* 52 Cal.App.5th at pp. 1028–1029, with *Flores, supra,* 54 Cal.App.5th at p. 269.) However, these cases confirm that *Wende* does not apply to appeals from the denial of postconviction relief and that appellate courts have no duty of independent review in such cases. (*Cole*, at pp. 1028 & 1039; *Flores*, at pp. 269 & 273.)

terms of confinement to which persons are exposed by virtue of their underlying convictions." (*Ibid.*)

Furthermore, the United States Supreme Court has held that an indigent defendant has no per se constitutional right to appointed counsel in parole or probation revocation hearings. (*Gagnon v. Scarpelli* (1973) 411 U.S. 778, 790–791 (*Gagnon*).) Because a sentencing hearing is a critical stage in a criminal prosecution, an indigent defendant has the constitutional right to appointed counsel at sentencing even when sentencing is deferred and a hearing is not conducted until after probation is revoked. (*Id.* at p. 781.) Beyond that, a due process right to counsel applies in revocation proceedings only on a "case-by-case basis." (*Id.* at p. 790.)

California has adopted a judicial rule of criminal procedure that is more far-reaching. It provides all defendants the right to be represented by counsel at probation revocation proceedings. (*People v. Bauer* (2012) 212 Cal.App.4th 150, 156.) Thus, "an indigent criminal defendant has the right to appointed counsel at a probation revocation hearing and a constitutional right to counsel at a deferred (postprobation revocation) sentencing hearing." (*Ibid.*; see also *People v. Vickers* (1972) 8 Cal.3d 451, 461 ["efficient administration of justice requires" assistance of counsel at parole revocation proceedings].)

However, deferred sentencing hearings are not relevant to PRCS revocation proceedings. PRCS is a post-conviction supervision scheme that operates as an alternative to parole. (*People v. Lewis* (2016) 4 Cal.App.5th 1085, 1092.) "PRCS is mandatory rather than discretionary and shall be for a period not exceeding three years." (*Ibid.*; § 3451, subd. (a).) A person on PRCS has already been sentenced for his or her underlying conviction and is considered to be currently serving that sentence until PRCS is completed.

(*Lewis, supra*, at p. 1092; see also *People v. Murdock* (2018) 25 Cal.App.5th 429, 434 ["any term of confinement ordered as a sanction for violating PRCS is not a 'sentence' "].)

*Wende/Anders* review was established to protect the federal constitutional right to the effective assistance of counsel in a direct appeal from a criminal conviction. We decline to extend that protection to an appeal from an order revoking and reinstating PRCS absent a federal constitutional basis for doing so. Thus, if not for the fact that Freeman filed a supplemental brief, we would dismiss this appeal as abandoned. (See *Serrano, supra*, 211 Cal.App.4th at pp. 503–504.)

Here, Freeman has filed a handwritten "letter" listing issues he would like the court to address. When an appellant files a pro se supplemental brief in a *Wende* case, the appellate court must address the specific issues raised and, if they lack merit, explain why they fail. (*Kelly, supra*, 40 Cal.4th at p. 110.) We follow that same approach here. (*People v. Mattson* (1959) 51 Cal.2d 777, 797.)

## II. Freeman's Supplemental Brief Identifies No Prejudicial Error

Freeman's submission lists four issues, none of which identifies a prejudicial error.

First, Freeman posits that his appointed trial counsel provided "ineffective assistance of counsel" because she did not investigate whether Freeman's electronic monitor actually malfunctioned and, consequently, she failed to conduct an effective cross-examination of "the witness." On this record, we cannot find that Freeman had a federal constitutional right to effective assistance of counsel at his PRCS revocation hearing because he raises no fact or issue establishing a case-specific due process right to counsel. (See *Gagnon, supra*, 411 U.S. at pp. 790–791.) He does, however,

9

have a right deriving from state law to have appointed counsel represent him at the revocation hearing.  (§ 3455, subd. (a); *People v. Byron* (2016) 246 Cal.App.4th 1009, 1016–1017.)

Assuming without deciding that an ineffective assistance of counsel claim is cognizable under these circumstances, Freeman does not show that his counsel's performance was deficient or that he was prejudiced by the alleged errors.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688; *People v. Holt* (1997) 15 Cal.4th 619, 703.)  Specifically, we see nothing deficient about defense counsel's cross-examination of Sewell, which included questions about the possibility that Freeman's monitor malfunctioned.  The record does not support Freeman's contention that counsel failed to investigate the matter.  Moreover, the trial court found that Freeman violated PRCS, not because his monitor stopped working, but because he knew the monitor was not working and failed to take corrective action or call for assistance.

The other three issues in Freeman's letter are part of his sweeping due process challenge to the procedure by which his PRCS violation was adjudicated.  Freeman's argument, as we understand it, is that he was denied his right to a timely hearing on the revocation petition (issue two), and a speedy trial or its equivalent (issue three), because the Probation Department was allowed to file a second petition charging him with the same electronic monitoring violation (issue four) after the initial petition was dismissed.

"[P]ersons arrested for an alleged PRCS violation and charged in a revocation petition with violating PRCS have a due process right to a prompt determination of probable cause followed by a timely revocation hearing with the opportunity to appear in court and provide a defense."  (*People v. Murdock, supra*, 25 Cal.App.5th at p. 435.)  "PRCS revocations do not use the

same timetable as parole revocations" but do comport with the due process requirement of "an 'informal hearing structured to assure that the finding of a . . . violation will be based on verified facts.' " (*People v. Byron, supra,* 246 Cal.App.4th at p. 1015; see also *People v. Gutierrez* (2016) 245 Cal.App.4th 393, 402–404.)

Section 3455, which governs PRCS revocations, provides in pertinent part: "The revocation hearing shall be held within a reasonable time after the filing of the revocation petition." (§ 3455, subd. (c).) Here, the initial petition filed on February 7, 2020 was dismissed on March 13 because the People were not prepared to present their case. The hearing on the re-filed March 13 petition was not held until June, but Freeman's rights were protected after April 17, when the court released him from custody and reinstated PRCS pending completion of the hearing. We cannot say this timeframe was unreasonable under the totality of the circumstances, when we consider that these proceedings were conducted during the early, and highly disruptive, stage of the COVID-19 pandemic.

Even if the revocation hearing was not held within a reasonable time, Freeman is not entitled to relief absent a showing of prejudice. (*In re La Croix* (1974) 12 Cal.3d 146, 154.) Freeman argues he was prejudiced because he had to spend 72 days in custody before the revocation hearing was held. This argument simply ignores that 72 days of actual time and 72 days of conduct time were credited against the 180-day jail term that was imposed as a penalty for the PRCS violation. Regarding the specific objection to the filing of two petitions, Freeman fails to articulate how the filing of two petitions affected his substantial rights. There was no double punishment since the first petition was dismissed before the PRCS violation was adjudicated and the record shows that Freeman was awarded credits for all

11

the time he spent in custody after the filing of the first petition in February 2020.

## DISPOSITION

The order revoking and reinstating PRCS is affirmed.


TUCHER, J.


WE CONCUR:

POLLAK, P. J.
BROWN, J.


*People v. Freeman* (A160437)

12

Trial Court:        Sonoma County Superior Court

Trial Judge:        Hon. Shelly J. Averill

Counsel:            Kelley Fleming, by Court-Appointment under the First
                       District Appellate Project for Plaintiff and Appellant

                    Xavier Becerra, Attorney General of California for
                       Defendant and Respondent

*People v. Freeman* (A160437)

13